STATE of Wisconsin, Plaintiff-Respondent,

v.

William J. CHURCH, Defendant-Appellant.†

Court of Appeals

*No. 97–3140–CR. Submitted on briefs July 2, 1998.—Decided December 17, 1998.*

(Also reported in 589 N.W.2d 638.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mitchell E. Cooper,* assistant state public defender, Madison office.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Susan M. Crawford,* assistant attorney general with whom on the brief was *James E. Doyle,* attorney general.

Before Dykman, P.J., Eich and Deininger, JJ.

DEININGER, J. William Church was convicted of several offenses stemming from an incident in which he drugged and sexually assaulted a seventeen-year-old boy in a hotel room. Church's convictions include two counts of child enticement, under § 948.07, STATS., which he appeals on the grounds that the two counts are multiplicitous because they are based on a single act of enticement. We conclude that the two counts are multiplicitous because § 948.07 does not permit multi-

ple punishments for one act of enticement simply because the defendant intended multiple misdeeds, rather than a single misdeed, with the victim. We reverse his conviction on one count of enticement and remand for re-sentencing on all remaining convictions.

## BACKGROUND

The facts relevant to this appeal are undisputed. Church invited Jayson M., a seventeen-year-old boy, to travel with him from Cedar Rapids, Iowa, to the Wisconsin Dells. After Church and Jayson visited the Wisconsin Dells, they went to a hotel in Madison. In the hotel room, Church gave Jayson a marijuana cigarette, which they both smoked. Church also gave Jayson an alcohol drink, which Church had surreptitiously laced with a prescription painkiller. After Jayson fell asleep, Church exposed and photographed Jayson's penis, and he touched Jayson's penis several times. After Jayson slept for approximately two hours, he awoke when he felt Church touching his penis. Jayson left the hotel room and reported the incident to police officers who happened to be at the hotel.

A jury found Church guilty of five offenses: child sexual exploitation, contrary to § 948.05(1)(a), STATS.; delivering a controlled substance, contrary to § 961.41(1)(h)1, STATS.; second-degree sexual assault, contrary to § 940.225(2)(d), STATS.; and two counts of child enticement, one for enticement with intent to cause a child to expose a sex organ (§ 948.07(3), STATS.), and a second for enticement with intent to give a controlled substance to a child (§ 948.07(6), STATS.). Prior to sentencing, Church moved unsuccessfully to dismiss one of the enticement counts as multiplicitous. The court sentenced him to thirteen years in prison for the sexual assault, and it withheld sentence on the remain-

646

ing convictions, ordering two twenty-four-year probation terms on the enticement counts, as well as a ten-year and six-year probation term, all concurrent with each other but consecutive to the prison sentence. Church appeals only his two convictions for child enticement.

## ANALYSIS

The question before us is whether one act of enticing one child can support multiple enticement convictions because, at the time Church took Jayson into the hotel room, Church intended to commit multiple misdeeds.[1] The State contends that Church's multiple convictions are permissible because each conviction is supported by Church's intent to do a different prohibited act, and each conviction represents the violation of a different subsection of the child enticement statute. Church contends that the two convictions are multiplicitous because they impose multiple punishments for a single offense.

The crime of child enticement is defined in § 948.07, STATS., which provides:

----

[1] Often, proof of what a defendant intended consists largely of inferences derived from what the defendant subsequently did or attempted to do. Here, however, there was additional evidence from which a jury could conclude that Church had planned in advance to both give Jayson controlled substances and to take intimate photographs of him. Evidence collected from the hotel room included a small quantity of marijuana, a small container with residue of a prescription painkiller, a Polaroid camera, a Polaroid photograph of a penis, a video surveillance system, and notes in Church's handwriting on hotel stationery documenting the drugging, photography and touching of Jayson.

Whoever, with intent to commit any of the following acts, causes or attempts to cause any child who has not attained the age of 18 years to go into any vehicle, building, room or secluded place is guilty of a Class BC felony:

(1) Having sexual contact or sexual intercourse with the child in violation of s. 948.02 or 948.095.

(2) Causing the child to engage in prostitution.

(3) Exposing a sex organ to the child or causing the child to expose a sex organ in violation of s. 948.10.

(4) Taking a picture or making an audio recording of the child engaging in sexually explicit conduct.

(5) Causing bodily or mental harm to the child.

(6) Giving or selling to the child a controlled substance or controlled substance analog in violation of ch. 961.

When a defendant is charged with more than one count for a single offense, the charges are multiplicitous. *See State v. Rabe*, 96 Wis. 2d 48, 61, 291 N.W.2d 809, 815 (1980). Multiplicitous convictions violate the prohibition against double jeopardy contained in the Fifth Amendment of United States Constitution, which provides: "[N]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb."[2]

---

[2] Article I, section 8 of the Wisconsin Constitution provides that "no person for the same offense may be put twice in jeopardy of punishment." Wisconsin courts accept the decisions of the United States Supreme Court as governing on the double jeopardy provisions of both constitutions. *See State v. Rabe*, 96 Wis. 2d 48, 61 n.7, 291 N.W.2d 809, 815 (1980).

Whether Church's two convictions for child enticement violate the Fifth Amendment protection against double jeopardy is a question of law which we decide de novo. *See State v. Sauceda,* 168 Wis. 2d 486, 492, 485 N.W.2d 1, 3 (1992).

The United States Supreme Court has identified three protections afforded by the double jeopardy provision: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *United States v. Wilson,* 420 U.S. 332, 343 (1975) (citations omitted). In cases implicating the protection against multiple punishments, the question is whether the punishments are for the "same offense." The answer depends on the intent of the legislature in drafting the criminal statutes under which the defendant is convicted. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366 (1983).

Thus, although Church invokes the protection of the federal and state constitutions, the issue before us must be resolved as a question of statutory interpretation. If the legislature, in drafting § 948.07, STATS., intended multiple punishments for a single act of child enticement when that act was motivated by an intent to do multiple wrongs, then Church's convictions are not multiplicitous. If the legislature did not intend multiple punishments, then Church's convictions are constitutionally barred. *See Sauceda,* 168 Wis. 2d at 492, 485 N.W.2d at 3–4.

The legislature's intent regarding multiple punishment is not plainly stated in § 948.07, STATS. Church contends that the language of the statute indicates a legislative intent to impose only a single punishment because of the use of the term "any" in the first part of the statute. He argues that the term "any" does not mean "only one," but should be read as "one or more." Thus, the statute should be interpreted to mean: whoever entices a child with intent to commit *one or more* of the following acts is guilty of a *single* felony. As he points out, however, according to the dictionary, "any" means "one, some, every, or all without specification."[3] The dictionary definition demonstrates that Church's proffered interpretation is a reasonable one, but not necessarily the only reasonable one.

Because the legislature's intent under § 948.07, STATS., regarding multiple punishment is ambiguous, we employ the two-prong test the Wisconsin Supreme Court has adopted to evaluate whether charges are multiplicitous. First, a court must determine whether the offenses are "identical in the law and in fact." If identical in both law and fact, the charges are multiplicitous. Second, if the offenses are not the same in law or fact, the court must determine whether the legislature nevertheless intended the multiple offenses to be brought as one count. *See State v. Anderson*, 219 Wis. 2d 740, 747, 580 N.W.2d 329, 333 (1998).

### a. Identity in Law.

Our first inquiry is whether the offenses are identical in law. Church's child enticement convictions

---

[3] The definition which Church proffers is from THE AMERICAN HERITAGE COLLEGE DICTIONARY (3d ed. 1993).

were brought under a single statutory section, § 948.07, STATS., but each involved an intent element enumerated in different statutory subsections, § 948.07(3) and § 948.07(6). The State contends that because each subsection requires proof of a fact that the other does not, under the rule articulated in *Blockburger v. United States*, 284 U.S. 299 (1932), the two subsections are separate offenses and therefore Church may be punished under both.[4] We disagree.

We conclude that the question of whether Church's two convictions under § 948.07, STATS., are identical in law cannot be answered simply by applying the *Blockburger* rule. In *Blockburger*, the United States Supreme Court held that "[t]he applicable rule is that, where the same act or transaction constitutes a violation of *two distinct statutory provisions*, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304 (emphasis added). The principle underlying the *Blockburger* rule is that the legislature's enactment of separate criminal statutory provisions requiring proof

---

[4] The rule announced in *Blockburger v. United States*, 284 U.S. 299 (1932), has been codified in § 939.71, STATS., which provides, in relevant part:

> If an act forms the basis for a crime punishable under more than one statutory provision of this state . . . a conviction or acquittal on the merits under one provision bars a subsequent prosecution under the other provision unless each provision requires proof of a fact for conviction which the other does not require.

Although the statute refers only to "subsequent prosecutions," the supreme court has concluded that it relates as well to the constitutional prohibition against multiple punishments for a single offense. *See State v. Gordon*, 111 Wis. 2d 133, 140–41, 330 N.W.2d 564, 567 (1983).

of separate facts is an expression of legislative intent to permit multiple punishments. Under *Blockburger*, the existence of separate criminal statutory provisions requiring proof of separate facts gives rise to a presumption that the legislature intended multiple punishments, although that presumption may be rebutted by a clear legislative expression to the contrary. *See Albernaz v. United States*, 450 U.S. 333, 340 (1981).

Thus, the *Blockburger* rule is, at bottom, a specialized canon of statutory interpretation that serves as a means of discerning legislative intent when the legislature has enacted multiple, but distinct, statutory provisions proscribing related types of criminal behavior.[5] Before we may apply the rule, we must conclude that we are indeed reviewing "two distinct statutory provisions." Moreover, we cannot apply the *Blockburger* rule in isolation, but only in conjunction with other interpretative rules and methodology, including "the rule of lenity." In *Whalen v. United States*, 445 U.S. 684 (1980), the United States Supreme Court concluded that multiple punishments under two Washington D.C. statutes were multiplicitous. In ana-

---

[5] *See Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (noting that *"Blockburger* established a rule of statutory construction"); *Albernaz v. United States,* 450 U.S. 333, 340 (1981) ("The *Blockburger* test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent."); *Whalen v. United States,* 445 U.S. 684, 691 (1980) (explaining that *Blockburger* states "a rule of statutory construction"); *and Whalen,* 445 U.S. at 708 (Rehnquist, J., dissenting) (observing that the *Blockburger* test "is a rule of statutory construction, not a constitutional talisman").

lyzing whether each provision required proof of a fact that the other did not, the Court indicated that any ambiguity would be construed in favor of the defendant: "To the extent that the Government's argument persuades us that the matter is not entirely free of doubt, the doubt must be resolved in favor of lenity." *Id.* at 694. As the Court explained in *Albernaz*:

> [T]he rule of lenity is a principle of statutory construction which applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose. . . . "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended."

450 U.S. at 342 (citations omitted).

Therefore, if the legislature has unambiguously enacted two distinct prohibitions of criminal behavior, with each statutory provision plainly requiring proof of a fact that the other does not, the *Blockburger* presumption of an intent to allow multiple punishment governs. But, when the language of a statute is ambiguous, the rule of lenity applies to the resolution of that ambiguity. We conclude that the *Blockburger* rule does not resolve the question before us.

As the State acknowledges, the language of § 948.07, STATS., is ambiguous in that it expresses no clear intent to permit or to prohibit multiple punishments. Moreover, § 948.07(3) and (6), are not "distinct statutory provisions," in the sense that neither, standing alone, constitutes a separate offense. The introductory portion of § 948.07 provides that whoever does a particular act (causes or attempts to cause a

child to go to a place away from public view), with the intent to do any of certain other specified acts, is guilty of a crime. The subsections then specify the various intended acts that may be proven in order to render the seclusion of the child criminal.

Church's convictions are thus distinguishable from those upheld in *State v. Sauceda*, 168 Wis. 2d 486, 485 N.W.2d 1 (1992). In *Sauceda*, the defendant was convicted under both § 940.225(1)(d)[6] and (2)(d),[7] STATS., 1985–86, for a single sexual assault of a sleeping twelve-year-old girl. The supreme court applied the *Blockburger* rule and concluded that, although the defendant had been convicted twice for a single sexual assault under a single statutory section, the paragraphs under which he was convicted were not the same in law. *See id.* at 489. Accordingly, punishment under both paragraphs for a single sexual assault was permissible. Unlike the subsections of § 948.07, STATS., however, the paragraphs in *Sauceda* were distinct statutory provisions in that each defined a complete crime that was capable of being independently violated. Section 940.225(1)(d), STATS., provided that it was a crime

---

[6] Section 940.225(1), STATS., 1985–86, provides in relevant part:

> (1) FIRST DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class B felony:
>
> . . . .
> (d) Has sexual contact or sexual intercourse with a person 12 years of age or younger.

[7] Section 940.225(2), STATS., 1985–86, provides in relevant part:

> (2) SECOND DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class C felony:
>
> . . . .
> (d) Has sexual contact or sexual intercourse with a person who the defendant knows is unconscious.

654

to "[have] sexual contact or sexual intercourse with a person 12 years of age or younger." Section 940.225(2)(d) provided that it was a crime to "[have] sexual contact or sexual intercourse with a person who the defendant knows is unconscious." Because the two paragraphs unambiguously defined separate offenses, the court applied the *Blockburger* rule and concluded that the offenses were not the same in law. *See id.* at 495–96.

The subsections of § 948.07, STATS., at issue here are more akin to the statutory provisions that the supreme court determined were "the same in law" in *State v. Eisch*, 96 Wis. 2d 25, 291 N.W.2d 800 (1980). In *Eisch*, the defendant had been charged with four counts of second-degree sexual assault under § 940.225(2)(a), STATS., one each for acts of vaginal intercourse, oral intercourse, anal intercourse, and the insertion of a bottle into the victim's vagina. The question was "whether four acts of sexual intercourse, each different in kind from the others and differently defined in the statutes, constitute four separately chargeable criminal offenses." *Id.* at 27, 291 N.W.2d at 801. Section 940.225(2)(a), STATS., 1977, provided that it was a felony to have "sexual intercourse with another person without consent of that person by use or threat of force or violence." Sexual intercourse, in turn, was defined in § 940.225(5)(c), STATS., 1977, to "include[ ] the meaning assigned under s. 939.22(36) as well as cunnilingus, fellatio, anal intercourse or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening of another." The *Eisch* court concluded that the four counts of sexual assault were the same in law, "in the sense that each would constitute a legal predicate for prosecution under the statute." *Eisch,* 96 Wis. 2d at 31,

291 N.W.2d at 803.[8] (The court ultimately concluded that multiple convictions were permissible, however, because the four acts of intercourse were not the same in fact, because the separate assaults constituted separate volitional acts that were separated in time.)

We conclude, therefore, that even though each of the subsections of § 948.07, STATS., refers to intended acts that the other subsections do not, the statute is at

---

[8] We note that in *Eisch*, the alternative definitions of sexual intercourse for which the defendant was separately charged were largely included within one statutory subsection. The State relies on this distinction and asserts that "[t]he structure of the subsections under section 948.07 . . . indicates a legislative intent to establish different offenses with each subsection." That is, the State would have us conclude that the structure of § 948.07, STATS., indicates that the legislature did not intend multiple punishments when a defendant secludes a child with the intent of having both sexual contact and sexual intercourse with the child, because these acts are included in the same subsection of § 948.07, but that it did intend multiple punishments on the present facts because the intended acts are in separate subsections.

We conclude, however, that the listing of the alternative intent elements in separate subsections in § 948.07, STATS., is without significance. As the supreme court concluded in *Sauceda*, analysis under the first prong of the multiplicity test is the same "regardless of whether the offenses are contained within the same or separate statutory sections." *State v. Sauceda*, 168 Wis. 2d 486, 495, 485 N.W.2d 1, 4 (1992). Likewise, when evaluating a similar multiplicity challenge, the United State Supreme Court considered whether the use of separate statutory sections would have affected its analysis, and the Court concluded that it would not. "It is doubtful that Congress could have imagined that so formal a difference in drafting had any practical significance, and we ascribe none to it." *Whalen v. United States*, 445 U.S. 684, 694 (1980).

656

least ambiguous as to whether each subsection is a "distinct statutory provision" defining a separate offense. The *Blockburger* rule does not resolve that ambiguity inasmuch as the existence of "two distinct statutory provisions" is a precondition for the application of *Blockburger*. *See Blockburger*, 284 U.S. at 304. Accordingly, we must resolve any ambiguity "in favor of lenity."[9] *See Whalen*, 445 U.S. at 694. We conclude that the offenses for which Church was convicted under multiple subsections of § 948.07, STATS., are the same in law.

### b. Identity in Fact.

A defendant may be multiply punished for criminal violations which are the same in law, if the offenses are different in fact. We turn next to the question of whether Church's two enticement convictions were the same in fact. Multiple offenses are not the same in fact if the facts on which they are based are "either separated in time or of a significantly different nature." *State v. Anderson*, 219 Wis. 2d 740, 750, 580 N.W.2d 329, 334 (1998) (citing *Eisch*, 96 Wis. 2d at 31, 291 N.W.2d at 803). The facts on which Church's convictions were based were not at all separated in time: both convictions were based on Church's intentions at the instant he caused Jayson to enter the hotel room.

---

[9] The dissent concedes that the legislature's choice of language is "[a]t best, . . . ambiguous as to legislative intent." Nonetheless, the dissent is willing to employ a "presumption that the legislature intended to permit cumulative convictions." We believe that presumptively resolving an ambiguity in a criminal statute against a defendant is contrary to well established principles of statutory construction.

The inquiry, then, becomes whether the facts underlying each of Church's enticement convictions are significantly different in nature. Multiple offenses "are significantly different in nature if each requires 'a new volitional departure in the defendant's course of conduct.' " *Anderson*, 219 Wis. 2d at 751, 580 N.W.2d at 334 (quoting *Eisch*, 96 Wis. 2d at 36, 291 N.W.2d at 805). In *Anderson*, the defendant was convicted of two counts of bail jumping after he violated two conditions of the bond under which he had been released.[10] The supreme court held that the two convictions were not the same in fact, and therefore not multiplicitous, because "[e]ach offense require[d] a different and new volitional act on the defendant's part." *Anderson*, 219 Wis. 2d at 752, 580 N.W.2d at 334–35.[11] Unlike the multiple convictions upheld in *Anderson* and in *Eisch*, however, Church's convictions for child enticement are not supported by "different and new volitional act[s] on the defendant's part." The only factual difference in Church's two convictions derives from the fact that he simultaneously intended two subsequent wrongful

---

[10] The conditions of Anderson's bond that he was charged with violating were that he have no contact with the victim of his alleged battery and that he not consume alcoholic beverages or illegal drugs.

[11] The dissent asserts that "[t]he supreme court used the *Blockburger* analysis" in *Anderson*, but we find no reference to the *Blockburger* rule in the court's opinion. The *Blockburger* rule is of assistance only in determining whether two offenses are "identical in law," which is the first inquiry under the first prong of multiplicity analysis. In *Anderson*, this inquiry was unnecessary because, there, the State conceded "that the two bail-jumping charges are identical in law." *State v. Anderson*, 219 Wis. 2d 740, 748, 580 N.W.2d 329, 333 (1998).

acts, rather than a single one, when he committed the sole act on which both convictions rest. We conclude, therefore, that Church's two offenses are not only the same in law, but they are also the same in fact.

 *c. Other Indications of Legislature's Intent Regarding Multiple Punishments.*

 Our inquiry could end here. We have concluded that Church's two convictions under § 948.07, STATS., are the same in law and in fact, and thus there is no presumption that the legislature intended multiple punishments. We are mindful, however, that the objective of our analysis is to discern the legislative intent regarding multiple punishment under § 948.07, and that we have concluded that the language of the statute is ambiguous. Our determination that the two enticement offenses for which Church was convicted were the same in law rests primarily on a resolution of the statutory ambiguity in Church's favor under the rule of lenity. We deem it appropriate, therefore, to examine other indicators of legislative intent, to see if they might assist in resolving the statutory ambiguity.
 The supreme court reasoned in *State v. Grayson,* 172 Wis. 2d 156, 162, 493 N.W.2d 23, 26 (1992), that "because the legislature failed to expressly state the allowable unit of prosecution under [the statute], this court must determine its intent as to that issue according to 'a common sense reading of the statute' that will give effect to 'the object of the legislature' and produce a result that is 'reasonable and fair to offenders and society'" (citations omitted). Thus, we undertake a variation of the second prong of the multiplicity analysis: a consideration of whether our preliminary conclusion that Church's convictions are multiplicitous is contravened by any indication that the legislature

intended multiple punishments when a defendant is convicted of a single act of enticement while intending to commit multiple unlawful acts.[12]

Under the second prong of the multiplicity analysis, we examine the following factors: (1) the language of the statute; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct. *See Anderson*, 219 Wis. 2d at 752–53, 580 N.W.2d at 335.

As we have already indicated, the language of § 948.07, STATS., is ambiguous regarding the legisla-

---

[12] If a court determines, by applying *Blockburger* or otherwise, that two offenses are not the same in law, or if it determines that the offenses are not the same in fact, then a presumption arises that the legislature intended multiple punishments. The second prong of the multiplicity analysis is then necessary to ensure that there are no other indications that, despite the lack of identity in law or fact, the legislature nevertheless "intended the multiple offenses to be brought as a single count." *State v. Anderson*, 219 Wis. 2d 740, 747, 580 N.W.2d 329, 333 (1998).

Here, we have concluded that Church's two enticement convictions are identical in both law and fact, and thus there is no reason to presume the legislature intended multiple punishments. However, to test our preliminary conclusion, we have indeed shifted the inquiry under the second prong of the multiplicity analysis as the dissent suggests. We do so in order to satisfy ourselves that there are no reasons to believe the legislature intended to impose multiple punishments for two apparently identical offenses. Had we concluded, as does the dissent, that Church's two convictions are not identical in law and fact, we would have recognized the presumption in favor of multiple punishments and then inquired, under the second prong of our analysis, whether that presumption is rebutted by other indicators of legislative intent.

ture's intent to impose multiple punishment. We thus turn next to the statute's legislative history. Church cites comments by the Judicial Council regarding a 1955 revision of the enticement statute, the text of which we quote below. The legislature's intent in 1955 regarding the former § 944.12, STATS., is unhelpful because the statutory subsections presently at issue were not enacted until 1987. *See* 1987 Wis. Act 332, § 55. Contrary to a suggestion in Church's brief, 1987 Wis. Act 332 was not simply a "revisor's bill," but a comprehensive revision of state laws relating to crimes against children. Accordingly, we will not presume that the statute's meaning has remained unchanged since 1955, and we restrict our examination to the history of the present § 948.07, STATS., which specifically identifies and enumerates the intended bad acts which may support a charge of child enticement.

The subsections of § 948.07, STATS., were recommended by a Special Committee on Crimes Against Children, created in 1986 by the Legislative Council. The special committee was charged with the responsibility of reviewing Wisconsin law and considering whether statutes relating to crimes against children should be reorganized into a separate chapter. *See* WISCONSIN LEGISLATIVE COUNCIL, REPORT NO. 7 TO THE 1987 LEGISLATURE: LEGISLATION ON CRIMES AGAINST CHILDREN (April 21, 1987). The existing child enticement statute, § 944.12, STATS., 1985–86, was one of the statutes the special committee recommended for revision and incorporation into what became ch. 948, STATS. The special committee's recommendations regarding the child enticement statute were enacted by the legislature in 1987 Act 332, § 55.

The records of the special committee suggest that the enumerated list of intended acts in § 948.07, STATS.,

661

was included in order to clarify ambiguity regarding what intended acts would support a charge of enticement, not to provide prosecutors with the discretion to charge each intent as a separate crime. The former § 944.12, STATS., provided:

> ENTICING A CHILD FOR IMMORAL PURPOSES. Any person 18 years or older, who, with the intent to commit a crime against sexual morality, persuades or entices any child under 18 years of age into any vehicle, building, room or secluded place is guilty of a Class C felony.

The special committee recommended several changes to the statute, including replacing the term "crime against sexual morality" with a list of specific intended acts that would support a charge of child enticement. The summary of the proceedings of the special committee explains the purpose of this revision as follows:

> [The legislative council staff attorney] noted that under the current statute, a violation requires proof of intent to commit a crime against sexual morality. [The staff attorney] noted that, although the term "crime against sexual morality" has been judicially interpreted to apply to crimes other than those listed in ch. 944, STATS., relating to crimes against sexual morality, the Committee could consider clarifying this aspect of the statute.[13]

---

[13] The judicial interpretation mentioned by the Legislative Council staff attorney is *State v. Morrow*, 95 Wis. 2d 595, 291 N.W.2d 298 (Ct. App. 1980), in which this court interpreted "crime against sexual morality" *to include not only violations of* ch. 944, STATS., which was entitled "Crimes Against Sexual Morality," but also any crime of sexual immorality, regardless of its location in the statutes. *See* WISCONSIN LEGISLATIVE COUNCIL STAFF, CRIMES AGAINST CHILDREN: B. SEXUAL MORALITY, DISCUSSION PAPER 86-1B, August 15, 1986.

WISCONSIN LEGISLATIVE COUNCIL, SUMMARY OF PROCEED-
INGS, SPECIAL COMMITTEE ON CRIMES AGAINST CHILDREN,
September 18, 1986 at 10.

The potential for multiple charging and punish-
ment is not mentioned in the summaries of the
proceedings of the special committee's meetings or in
its report to the legislature. We conclude, therefore,
that the legislative history of the subsections in
§ 948.07, STATS., does not suggest that the legislature
intended multiple punishments for a defendant who
commits a single act of enticement while intending acts
prohibited under more than one subsection of the
statute.

The third factor we consider is the nature of the
proscribed conduct. As we have indicated above,
Church's second enticement conviction does not rest on
*any* different or additional conduct from that underly-
ing his first conviction. Church enticed one child, one
time, into one hotel room. Thus, we conclude that this
factor does not indicate a legislative intent to impose
multiple punishment.

Finally, we address two considerations regarding
the appropriateness of multiple punishments for
Church's two enticement convictions. First, we disa-
gree with the State's contention that the subsections of
§ 948.07, STATS., protect different interests of the vic-
tim, a view the dissent apparently shares. We agree
that children have distinct interests in being protected
from illicit sexual acts and from being given controlled
substances. Those interests, however, are protected by
statutes that prohibit the acts in question. Here,
Church was convicted and sentenced for each of the
three crimes he committed following his enticement of

663

Jayson: sexual assault, sexual exploitation, and delivering controlled substances. The crime of enticement is completed, however, when a person causes, or attempts to cause, a child to go to a secluded place, regardless of whether any of the intended illegal acts is ever completed or attempted.

Thus, the prohibition against enticement of children protects them from being taken into places away from public view, where the commission of some intended harm to the child might be facilitated. As we explained in *State v. Hanson*, 182 Wis. 2d 481, 487, 513 N.W.2d 700, 702 (Ct. App. 1994), "[t]he gravamen of the crime [of enticement] is not the commission of an enumerated act, but succeeding in getting a child to enter a place with intent to commit such a crime." Unlike the dissent, we conclude that Church's conviction for a single enticement offense, together with his three convictions for the acts he committed following the enticement, adequately addresses all of Jayson's interests violated by Church's conduct. Our conclusion does not render § 948.07, STATS., "redundant," as the dissent asserts. That section renders criminal the act of enticement. Its purpose is not to provide additional punishment for commission of the intended wrongful acts.

Second, we also conclude that multiple criminal punishments are appropriate for multiple acts, but not for multiple thoughts. The State contends that Church may be convicted of and punished for a second count of child enticement because he intended to commit a second illegal act, rather than just one, at the time he caused Jayson to enter the hotel room. In our view, the second enticement conviction is thus tantamount to punishing Church for an evil thought, which is the sole

664

distinguishing feature of the second enticement offense. Not only does this offend basic principles of criminal justice, it contradicts the intent of the legislature, as expressed by the Wisconsin criminal code's definition of a crime: "*A crime is conduct* which is prohibited by state law and punishable by fine or imprisonment or both." Section 939.12, STATS. (Emphasis added.)

█

We conclude that there is no basis on which we might conclude that the legislature intended more than a single punishment for a single act of enticement of a single child, thus confirming our preliminary conclusion that the two convictions are multiplicitous because they are the same in law and in fact. Church has been appropriately charged, convicted and sentenced for four criminal acts. He cannot be convicted and punished for a fifth crime, however, simply because he intended multiple misdeeds, instead of a single misdeed, when he committed one of those acts, the enticement of Jayson.

## CONCLUSION

We conclude that Church's two convictions for child enticement are multiplicitous, and we reverse one of those two convictions. We note that the sentences for both counts of child enticement were withheld and that concurrent twenty-four-year terms of probation, consecutive to the prison term for sexual assault, were ordered. Thus, our disposition would not, in itself, affect the duration of Church's prison sentence or of his subsequent term of supervision. Nevertheless, we conclude that we must vacate all sentences imposed for each of Church's four remaining convictions, and remand for re-sentencing on one count each of second-

665

degree sexual assault, child enticement, sexual exploitation of a child, and delivery of THC to a minor. *See State v. Gordon*, 111 Wis. 2d 133, 146, 330 N.W.2d 564, 570 (1983).

*By the Court.*—Judgment reversed and cause remanded with directions.

DYKMAN, P.J. *(dissenting)*. William Church entered the Quality Inn Motel with two intentions: (1) he intended to entice Jayson into his motel room so that he could cause Jayson to expose his penis; and (2) he intended to entice Jayson into his motel room so that he could give Jayson some marijuana.[1] Church was successful in both respects. Jayson smoked the marijuana and Church took a picture of Jayson's exposed penis. The Wisconsin legislature, however, had anticipated both of Church's desires. The legislature made it a crime to cause a child under the age of eighteen to enter into a room with the intent to have the child expose his sex organ. *See* § 948.07(3), STATS. The legislature also made it a crime to cause a child under the age of eighteen to enter a room with the intent of giving him a controlled substance. *See* § 948.07(6).

The problem in this case is that Church did one act—he caused a minor to enter into a room—with two different intents. The majority concludes that this is really one crime, which can be committed in several

---

[1] Section 948.07, STATS., criminalizes certain acts of child enticers who cause a child to enter a building, room or secluded place. Whether the result in this case would be different if the State charged Church with entering the Quality Inn Motel with one intent and entering his room with another intent is an issue the parties have not briefed.

ways. Thus, convicting Church of two crimes violates the double jeopardy provisions of our state and federal constitutions. I conclude that § 948.07, STATS., defines several crimes.

Wisconsin appellate courts have decided many double jeopardy cases. The theme of these cases is that we are to start with *Blockburger v. United States*, 284 U.S. 299 (1932) to solve double jeopardy questions.

The majority analyzes *Blockburger* in a manner that other Wisconsin courts have not. It concludes that when statutory language is ambiguous, the rule of lenity makes *Blockburger* inapplicable and, absent any "clear intent" of the legislature to punish two crimes rather than one, double jeopardy prohibits conviction for two crimes.

This analysis bears a certain resemblance to the analysis used by the dissent in *State v. Sauceda,* 168 Wis. 2d 486, 485 N.W.2d 1 (1992). There, the dissenting justice wrote:

> Applying the rule of strictly construing criminal statutes to safeguard the defendant's rights, or the rule of lenity, I conclude that any doubt concerning the legislature's intent should be resolved against turning a single act into an opportunity for multiple punishments.

*Sauceda*, 168 Wis. 2d at 507, 485 N.W.2d at 10 (footnotes omitted). But a dissent is what the law is not. The majority in *Sauceda* permitted just what the dissent decried: a defendant who touched a sleeping juvenile's vaginal area was subjected to two punishments: (1) because he knew the victim was under the age of twelve, a violation of § 940.225(1)(d), STATS., 1985–86; and (2) because he knew the victim was unconscious, a violation of § 940.225(2)(d), STATS., 1985–86.

In *State v. Anderson*, 219 Wis. 2d 740, 580 N.W.2d 329 (1998), the court considered whether a defendant who violated two conditions of a bail bond could be subjected to two punishments or only one. The supreme court used the *Blockburger* analysis, even though it relied upon *State v. Lechner*, 217 Wis. 2d 392, 576 N.W.2d 912 (1998), and concluded that each condition of a bail bond could support a separate conviction. The *Anderson* court said:

> It is well-established that this court analyzes claims of multiplicity using a two-prong test: (1) whether the charged offenses are identical in law and fact; and (2) if the offenses are not identical in law and fact, whether the legislature intended the multiple offenses to be brought as a single count.

*Anderson*, 219 Wis. 2d at 747, 580 N.W.2d at 333. The court noted that this analysis is the same whether we review multiple charges brought under different statutory sections, or multiple charges brought under one statutory section. *Anderson*, 219 Wis. 2d at 748, 580 N.W.2d at 333.

"The constitutional protections against double jeopardy in a single prosecution are meant to prevent a single *offense* from being arbitrarily transformed into multiple *offenses* with multiple punishments." *State v. Kanarowski*, 170 Wis. 2d 504, 510, 489 N.W.2d 660, 662 (Ct. App. 1992). Church caused Jayson to enter the motel room with two distinct purposes in mind, each of which is separately prohibited under § 948.07, STATS. Simply because one of the elements of each crime is shared by both crimes should not make a difference. As we said in *State v. Johnson*, 178 Wis. 2d 42, 48, 503 N.W.2d 575, 576 (Ct. App. 1993): "In simplest terms, the test is whether each offense requires proof of an

additional element or fact which the other does not." If the test were whether a shared element exists, *State v. Rabe*, 96 Wis. 2d 48, 291 N.W.2d 809 (1980), would have been decided differently. In *Rabe*, the defendant was charged with four counts of homicide by intoxicated use of a motor vehicle because he caused the death of four persons who died in an automobile accident. The "shared" element was the defendant's intoxication. The supreme court concluded that charging the defendant with four crimes did not offend the double jeopardy provisions of our constitutions.

Following *Anderson*, I conclude that each offense requires proof of an additional fact. Causing a child to expose his penis and giving the minor marijuana have nothing in common. Therefore, a presumption arises that the legislature intended to permit cumulative convictions of the statutes prohibiting those acts. *State v. Selmon*, 175 Wis. 2d 155, 161, 498 N.W.2d 876, 878 (Ct. App. 1993). This presumption may only be rebutted by a clear indication to the contrary. *Anderson*, 219 Wis. 2d at 752, 580 N.W.2d at 335.[2] To determine whether this presumption is rebutted, we examine four factors: (1) statutory language; (2) legislative history and context; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment. *Anderson*, 219 Wis. 2d at 752–53, 580 N.W.2d at 335. In some respects, I agree with the majority's observations as to these factors. But we differ significantly as to who bears the burden. I look to the four *Anderson* factors to see if they rebut the presumption that the legislature intended to permit cumulative convictions. The major-

---

[2] The majority's analysis reverses this presumption. Under the majority's analysis, if a statute is not clear, the *Blockburger* test is inapplicable.

ity looks at the four factors to see if they show a legislative intent to permit cumulative convictions.

Examining the statutory language, I find no clear indication that the legislature intended only one punishment no matter what Church did after he enticed Jayson into the room. At best, the language is ambiguous as to legislative intent. This does not rebut the presumption that the legislature intended multiple punishments.

The second factor we are to consider is legislative history and context. The majority concludes that the legislative history of the subsections in § 948.07, STATS., does not suggest that the legislature intended multiple punishments. While I agree, that is not the question. The legislative history cited by the majority does not clearly indicate to me that the legislature intended only one punishment. Thus, legislative history does not rebut the presumption that the legislature intended multiple punishments.

The third factor we are to consider is the nature of the proscribed conduct. Multiple punishments are permissible if the nature of the offenses is separate in time and significantly different in nature. *Anderson*, 219 Wis. 2d at 756, 580 N.W.2d at 336. In *Anderson*, the court concluded that because the nature of the different prescribed conduct caused different harms, there was no clear indication under this factor to overcome the presumption of cumulative punishments. *Anderson*, 219 Wis. 2d at 757, 580 N.W.2d at 336. I see differences in the facts of Church's convictions. Causing a child to expose his penis causes harm to the juvenile's reputation and feelings of self-worth. Giving marijuana to a juvenile can harm the juvenile's health and can involve others, if the effects of using the marijuana are other

than lethargy and sleep. The offenses are of a significantly different nature.

The final factor is the appropriateness of multiple punishments. By itself, this consideration does not have much meaning. But again, *Anderson* is helpful. The *Anderson* court focused on the deterrent effect multiple punishments have on potential violators and concluded that:

> Without imposing multiple punishments for violating the different terms of bail, a defendant may even be encouraged to violate multiple terms, knowing that the punishment will be no different whether he or she violates one or all terms of bail. It is difficult to believe that the legislature intended this result.

*Anderson*, 219 Wis. 2d at 757, 580 N.W.2d at 337. A similar analysis can be used here. It strains credulity to believe that the legislature intended to give a free ride to multiple § 948.07, STATS., violators. I do not believe that the legislature intended that once a child enticer got a child in a room and exposed his or her sex organ to the child, there would be no further § 948.07 liability if the enticer caused the child to engage in prostitution, caused the child to expose his or her sex organ, made a recording of the child engaging in sexually explicit conduct, caused bodily harm to the child or gave the child a controlled substance. It is not a plausible argument that the legislature has made each of these acts crimes in and of themselves, regardless of whether enticement occurs. If we accept that logic, all of § 948.07 becomes redundant.

I conclude that the legislature intended § 948.07, STATS., to create criminal liability in addition to the liability under other statutes for the acts without the

added element of enticement. Having so concluded, I see no reason why a separate conviction under each subsection of § 948.07 would be inappropriate. Using *Anderson's* analysis, alleged inappropriateness does not rebut the presumption that the legislature intended separate punishments.

I conclude that although the *Blockburger* test almost always results in a decision that the double jeopardy provisions of our constitutions are not violated by various multiple charging decisions, it is the test uniformly used by this court and the supreme court. There is probably a better test which would enhance the protection of our double jeopardy rights. Perhaps the majority's view is that test. But it is not the province of this court to promulgate a new test. *State v. Lossman*, 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984). Accordingly, I cannot join in the majority opinion, and therefore respectfully dissent.