STATE of Wisconsin, Plaintiff-Respondent,

v.

John S. PROVO, Defendant-Appellant.†

Court of Appeals

*No. 03–1710. Submitted on briefs February 5, 2004.—Decided April 7, 2004.*

2004 WI App 97

(Also reported in 681 N.W.2d 272.)

† Petition to review denied 8-2-04.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William H. Gergen* of *Gergen, Gergen & Pretto, S.C.*, of Beaver Dam.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *David J. Becker*, assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. BROWN, J. John S. Provo appeals from a judgment of conviction for child enticement in violation of Wis. Stat. § 948.07(3) (2001–02)[1] and a postconviction order denying his motion for plea withdrawal and a new trial. On appeal, Provo contends, inter alia, that his trial counsel's representation was ineffective because his counsel failed to argue that the offense of child enticement requires proof that the person charged with the offense caused the child to go from a public place to a secluded place and that he did not do so. We hold that § 948.07 requires only that the defendant cause the child to go into any vehicle, building, room, or secluded place with the intent to engage in illicit conduct, but not that the child necessarily be first separated from "the public." We also reject Provo's remaining claims of ineffective assistance of counsel. We affirm.

¶ 2. On December 4, 2000, the State charged Provo with the crimes of child enticement and sexual intercourse with a child, contrary to Wis. Stat. § 948.09. The preliminary hearing was held on December 22. Provo appeared at the preliminary hearing with his trial attorney.

¶ 3. At the hearing, the following exchanges took place between the prosecutor and the victim:

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[Question:] . . . . Did he ever touch any private areas of yourself?

[Answer:] Yes.

[Question:] How would you describe a private area?

[Answer:] Basically putting his penis in my vaginal area and he touched my breasts like maybe twice.

[Question:] Did you ever see his private areas?

[Answer:] Not that I can recall.

[Question:] Did he see your vaginal area you just described?

[Answer:] Yes.

[Question:] Where did that occur?

[Answer:] In either my bedroom or the back bedroom of my house.

. . . .

[Question:] How did it happen you wound up in your bedroom when that occurred?

[Answer:] At—probably be like waking me up in the morning on a Saturday, and he would either ask for a hug or something more or just basically saying he wanted to basically sexually assault me.

[Question:] Did he ever ask you to go into your bedroom?

[Answer:] I would already be there.

[Question:] Did he ever ask you to go into the back bedroom you described?

[Answer:] Yes.

843

[Question:] And for what purpose did he ask you to go into the bedroom?

[Answer:] To have sexual contact with me.

. . . .

[Question:] When you said sexual contact, what specifically are you describing?

[Answer:] Putting his penis in my vagina and humping me.

[Question:] Did you have your clothes off when that occurred?

[Answer:] From the waist down, yes.

. . . .

[Question:] Did he have any clothes on?

[Answer:] No.

¶ 4. Provo's counsel did not object to any of the prosecutor's questions or the victim's answers. He did not cross-examine the victim. At the conclusion of the victim's testimony, Provo's counsel argued with respect to the enticement count that the "record is void of any testimony, any evidence conceivable to support bindover on that charge" and asked the court not to enter an order of bindover. The trial court rejected his argument, finding:

As I recall in the testimony, the witness did indicate that [Provo] asked her to go back into a back bedroom for sexual contact and that he went back there for the purposes of essentially sexually assaulting her; that she did not have any clothes on of any sort below her waist, that her genital areas were exposed; that he essentially

took her back there to do that; and I do find that does meet the elements of 948.07(3) and at this time will bind [Provo] over for trial in this matter . . . .

Provo ultimately entered a plea of no contest to the charge of child enticement; the second count was to be read in and dismissed at sentencing. At the sentencing hearing, the prosecutor pointed out to the court that Provo had not told the presentence investigator about a prior conviction for a sex crime in Michigan. The presentence report recommended ten years of probation with a year in jail as condition time. The prosecutor recommended ten to fifteen years' incarceration. Based on the record, the court found that Provo was "likely to reoffend" and sentenced Provo to a period of initial confinement of twelve years followed by extended supervision of five years, the total length of sentence being seventeen years. In making its ruling, the court noted that it was troubled by the fact that Provo did not indicate his criminal record to the presentence investigation report writer.

¶ 5. Thereafter, Provo filed a postconviction motion to withdraw his plea and for a new trial, arguing that his trial counsel was ineffective at the preliminary hearing and with respect to the plea agreement that resulted in his conviction. The court denied Provo's motion and this appeal followed.

¶ 6. The sole issue raised on appeal is whether Provo was denied his constitutional right to the effective assistance of counsel. The issue of whether a person has been deprived of the constitutional right to the effective assistance of counsel presents a mixed question of law and fact. *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). We will uphold the

trial court's findings of fact unless they are clearly erroneous. *Id.* We review whether defense counsel's performance was deficient and prejudicial de novo. *Id.* at 128.

¶ 7. To prevail on a claim of ineffective assistance of counsel a defendant must establish both that the trial counsel's performance was deficient and that this performance prejudiced his or her defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must establish that his or her counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Swinson,* 2003 WI App 45, ¶ 58, 261 Wis. 2d 633, 660 N.W.2d 12 (citation omitted), *review denied,* 2003 WI 126, 265 Wis. 2d 417, 668 N.W.2d 557. The defendant must overcome a strong presumption that his or her counsel acted reasonably within professional norms. *Id.* To satisfy the prejudice prong, the defendant must show that counsel's errors were serious enough to render the resulting conviction unreliable. *Id.* We need not address both components of the test if the defendant fails to make a sufficient showing on one of them. *Id.*

¶ 8. Provo's lead argument concerning his counsel's deficient performance is that his counsel failed to challenge the "enticement" element of Wis. Stat. § 948.07(3). He contends that the offense of child enticement requires proof that the person charged with the offense caused the child to go from a public place to a secluded place. Here, Provo observes that the offense charged that he caused the victim to go from an already private place (the home) to another private place (the bedroom). Provo reasons that because the victim was never removed from a public place, the statute is

inapplicable. Because his counsel did not cross-examine the victim on this point and did not otherwise pursue this issue thereafter with the trial court, Provo reasons that his counsel was ineffective.

¶ 9. In *State v. Gomez*, 179 Wis. 2d 400, 507 N.W.2d 378 (Ct. App. 1993), we directly addressed the issue Provo presents. There, we held that there was sufficient evidence to support the jury's conviction of child enticement where the defendant had caused his stepdaughter to go into her own bedroom, where he told her to remove her clothing, and then masturbated. *Id.* at 402–03. We rejected the defense argument that, because the statute was intended to punish the act of separating a child from the public, its provisions could not be applied to the act of causing a child to go into his or her own room from the house proper. *See id.* at 404–05. We declared: "The statute unambiguously requires that the defendant cause the child to *go into any room.* The statute does not require that the defendant's action separate the child from the public." *Id.* at 405.

¶ 10. Provo acknowledges our holding in *Gomez*, but contends that *State v. Church*, 223 Wis. 2d 641, 589 N.W.2d 638 (Ct. App. 1998), *State v. DeRango*, 229 Wis. 2d 1, 599 N.W.2d 27 (Ct. App. 1999), and *State v. Koenck*, 2001 WI App 93, 242 Wis. 2d 693, 626 N.W.2d 359, are in conflict with *Gomez* and compel a different outcome. He submits that these cases hold that Wis. Stat. § 948.07(3) contains a public place to private place element.

¶ 11. Provo misreads our pronouncements concerning the purpose of the child enticement statute. In *Church*, we stated "the prohibition against enticement of children protects them from being taken into places away from public view, where the commission of some intended harm to the child might be facilitated."

*Church*, 223 Wis. 2d at 664. In *DeRango*, we echoed the sentiment proclaimed in *Church*:

> [T]he child enticement statute looks to thwart individuals from causing a child to go to a secluded place in order to facilitate some illegal conduct, be it sexual, physical or mental harm. As the State suggests, the aim is to address the social evil of removing children from the protection of the general public . . . .

*DeRango*, 229 Wis. 2d at 16. To like effect, we stated in *Koenck*, "Section 948.07 prohibits individuals from causing or attempting to cause a child to go to a secluded place in order to facilitate some illegal conduct; its aim is to address the social evil of removing children from the protection of the general public." *Koenck*, 242 Wis. 2d 693, ¶ 9.

¶ 12. None of the cases impose a limitation on the place where the child was when the person caused him or her to go into a place out of the public view. Rather, in all three cases we merely recognized, as we did in *Gomez*, that the gravamen of the child enticement statute is to prevent children from being taken into places outside of the protection of the public where the commission of some illegal conduct might be facilitated. All four cases zeroed in on the fact that the place the child was taken existed outside the public view. No language says that the place from which the child was taken had to be a public place. Thus, *Church*, *DeRango* and *Koenck* are wholly consistent with our holding in *Gomez*.

¶ 13. The child enticement statute proscribes, without qualification, "caus[ing] any child who has not attained the age of 18 years to go into any vehicle, building, room or secluded place" with the intent to

commit any of the enumerated acts. Wis. Stat. § 948.07. As *Gomez* rightly observes, there is simply no requirement that the defendant separate the child from the public. Further, we find no indication in the legislative history of the act that its purpose is to prevent predators from luring children from a public place. We, therefore, reject Provo's invitation to read into the statute a requirement that the accused have caused the minor victim to go from a public place to a secluded place. Accordingly, we conclude that the lawyer's failure to cross-examine the victim at the preliminary hearing and to otherwise pursue the issue did not constitute ineffective assistance of counsel.

¶ 14. Provo raises a host of other complaints concerning his counsel's performance both at the preliminary hearing and during plea negotiations. We address them in seriatim.

¶ 15. First, he complains that his attorney was ineffective for failing to make a detailed argument against a bindover at the preliminary hearing. Instead, his counsel only submitted that the "record is void of any testimony, any evidence conceivable to support bindover on that charge." If Provo is arguing that his counsel was ineffective for failing to raise the "public place/secluded place" issue, the preceding discussion disposes of that argument. Provo may also be contending that his counsel should have argued that the evidence did not demonstrate Provo's intent to commit one of the statute's enumerated acts. Following the preliminary hearing, the trial court made an explicit finding, based on the victim's testimony, that Provo had the express intent to take the child into the back room for the purposes of exposing his or the victim's genitals. Perhaps his attorney could have pressed this issue

more; however, Provo fails to show how the trial court's determination would have been different had his attorney pursued his claim of evidentiary insufficiency with more specificity. *See State v. Wirts*, 176 Wis. 2d 174, 187, 500 N.W.2d 317 (Ct. App. 1993) (stating that a criminal defendant who claims ineffective assistance of counsel "cannot ask the reviewing court to speculate whether counsel's deficient performance resulted in prejudice to the defendant's defense"); *see also State v. Byrge*, 225 Wis. 2d 702, 724, 594 N.W.2d 388 (Ct. App. 1999) (observing that "[a] defendant who alleges that counsel was ineffective by failing to take certain steps must show with specificity what the actions, if taken, would have revealed and how they would have altered the outcome of the proceeding").

¶ 16. Next, Provo contends that his counsel was ineffective because he failed to cross-examine the victim at the preliminary hearing. We reject his contention for three reasons. First, Provo's counsel testified at the *Machner*[2] hearing that he was fearful that if he cross-examined the victim, he might elicit more damaging testimony and render his argument against bindover meritless. This is a professionally reasonable strategic decision. *See State v. Felton*, 110 Wis. 2d 485, 502–03, 329 N.W.2d 161 (1983) (stating that we will uphold counsel's strategic decision if it was rationally based on the facts of the case and the law). Second, if Provo is arguing that his counsel should have cross-examined the victim about the "public place/secluded place" distinction, our preceding discussion disposes of his argument. Finally, even assuming his counsel's performance

---

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

was deficient, Provo has again failed to prove prejudice. He has not demonstrated what cross-examination of the victim would have revealed and how that would have altered the outcome of the proceeding. *See Wirts*, 176 Wis. 2d at 187; *Byrge*, 225 Wis. 2d at 724.

¶ 17. We now turn to Provo's claims that his counsel was ineffective in negotiating the plea agreement. He first argues that his counsel failed to recognize that he had a viable defense or, alternatively, that his counsel should have taken the case to trial even if his counsel believed that he had no defense. Here again, our previous discussion disposes of this argument to the extent that it is based on his "public place/secluded place" theory. Aside from this, Provo never states what defense he would have proferred. Instead, he simply asserts that "[i]t is not frivolous for defense counsel to make the State jump through every hoop possible before convicting a given defendant on a given charge." However, the question before us is not whether going to trial would have been frivolous; rather, the question is whether his counsel's recommendation that Provo accept the plea bargain was ineffective. Provo's counsel testified at the *Machner* hearing that he had concluded that Provo had no valid theory of defense and, as a result, it "was just not a wise course of action" for Provo to go to trial. Such conduct is not ineffective. To the contrary, a lawyer has the right and duty to recommend a plea bargain if he or she feels it is in the best interests of the accused. *State v. Rock*, 92 Wis. 2d 554, 563–64, 285 N.W.2d 739 (1979) (adopting the proposition that "[o]nce the lawyer has concluded that it is in the best interests of the accused to enter a guilty plea, he should use reasonable persuasion to guide the client to a sound decision" (quoted source omitted)).

¶ 18. Provo further argues his counsel was ineffective for recommending that he accept the plea agreement because he ultimately received a more severe sentence than that propounded by his counsel. However, this is not a basis for an ineffective assistance of counsel claim. *See People v. Felice*, 477 N.W.2d 455, 460 (Mich. Ct. App. 1991) ("Counsel's incorrect prediction concerning defendant's sentence . . . is not enough to support a claim of ineffective assistance of counsel."); *Rosenfeld v. United States*, 972 F. Supp. 137, 144 (E.D.N.Y. 1997) ("[M]istaken estimate of [a defendant's] sentence is insufficient to support a claim for ineffective assistance of counsel."). Moreover, our supreme court has recognized that a guilty plea can often be a mitigating factor in the sentencing process. *See Jung v. State*, 32 Wis. 2d 541, 550, 145 N.W.2d 684 (1966) ("It is common knowledge there is a wide practice in the courts of this country of accepting pleas of guilty and giving lighter sentences than are generally given for the same crime after a trial.").

¶ 19. Provo next complains that his attorney used unreasonable persuasion to get him to accept the plea agreement when his attorney told him "that, if he went to trial, he would suffer more dire consequences than if he accepted the plea." However, the trial court, relying on Provo's testimony at the *Machner* hearing and on the plea colloquy, expressly rejected this argument on credibility grounds. The court found that "[Provo] entered a free and voluntary plea in this case." It is not our place to disturb this credibility determination. *See State v. Pote*, 2003 WI App 31, ¶ 17, 260 Wis. 2d 426, 659 N.W.2d 82 ("We accept the trial court's findings in this case inasmuch as they are largely based on its credibil-

ity determinations."); *State v. Hampton*, 217 Wis. 2d 614, 623, 579 N.W.2d 260 (Ct. App. 1998). Further, Provo has not made the transcript of the plea hearing a part of the record. Consequently, we must assume that the transcript of that hearing supports the trial court's finding that Provo's plea was not coerced. *See State v. McAttee*, 2001 WI App 262, ¶ 5 n.1, 248 Wis. 2d 865, 637 N.W.2d 774 ("It is the appellant's responsibility to ensure completion of the appellate record and 'when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling.'" (Citation omitted)).

¶ 20. Finally, Provo submits that his counsel was ineffective for failing to advise Provo to tell the presentence investigator about his prior conviction in Michigan. However, Provo admitted at the *Machner* hearing that his counsel did tell him that if he did not reveal the conviction and the presentence investigator discovered it, "it's going to be bad for us." Given his counsel's warning, we fail to see how Provo's counsel's representation was ineffective. For the foregoing reasons, we reject Provo's claims of ineffective assistance of counsel and affirm.

*By the Court.*—Judgment and order affirmed.