STATE of Wisconsin, Plaintiff-Respondent,

v.

Juan F. MILANES, Defendant-Appellant.†

Court of Appeals

*No. 2006AP14. Submitted on briefs October 5, 2006.
—Decided November 8, 2006.*

2006 WI App 259

(Also reported in 727 N.W.2d 94.)

---

† Petition to review filed.

684

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joan M. Boyd* of Shawano.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Warren D. Weinstein*, assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. Juan F. Milanes appeals an order denying his motion for postconviction relief under WIS. STAT. § 974.06 (2003–04).[1] Milanes pled no contest to several charges arising from a string of incidents that occurred over several days in March 2000. He now

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

argues that he was denied effective assistance of counsel because his attorney did not sufficiently investigate his claim that his confession was coerced. He further argues that his attorney failed to adequately investigate a defense of mental disease or defect and that these failures together with Milanes' lack of fluency in English led to an unknowing and involuntary no contest plea. We disagree and hold that Milanes' trial counsel acted reasonably in advising Milanes to plead no contest, and that Milanes has provided no evidence to support his claim of an invalid plea. We therefore affirm.

¶ 2. The complaint that began this case alleged that Milanes had committed a string of offenses over a two-week period: property damage (by slashing the tires of three automobiles); obstructing an officer (by filing a false police report regarding the slashing of his own tires); endangering safety by use of a dangerous weapon and property damage (by firing a gun into his own home, where two people were sleeping); arson and manufacture of a Molotov cocktail (for the attempted firebombing of an acquaintance's home); obstructing an officer (by filing a false police report regarding the attempted firebombing); and endangering safety by use of a dangerous weapon, property damage and possession of a short-barrel shotgun (for firing a shotgun from his car through the window of a Radio Shack store).

¶ 3. Police responding to the Radio Shack shooting determined that a vehicle had been involved and found the vehicle outside a Kenosha residence. The driver's side window of the vehicle was shattered. The police also found Milanes, who had lacerations and punctures on his face. A search of the premises revealed a sawed-off shotgun and a .45 caliber pistol.

¶ 4. Later that day, Milanes signed a statement saying that he had committed all of the offenses described above. He stated that at the time he committed the acts, he was very upset with his stepdaughter over her behavior. He also explained that he had fired at the Radio Shack window from his car, but had forgotten to roll down his window, resulting in the glass shattering on him.

¶ 5. Milanes initially pled not guilty to the charges and retained an attorney. Milanes, through his attorney, later amended his plea to not guilty by reason of mental disease or defect as allowed by WIS. STAT. § 971.15. The court appointed one psychological expert each for the State and for the defendant. Their reports were eventually filed with the court, along with an affidavit from Milanes' personal physician.

¶ 6. The report from Milanes' expert consists of three short letters sent to Milanes' attorney. The first letter describes Milanes' symptoms and history of alcoholism, seizures and diabetes, and concludes, "I feel at this time Mr. Milanes suffers from PTSD, depression, possible temporal lobe seizures, and alcoholism, which would explain his legal difficulties." The second letter, formalities and salutations aside, reads in its entirety as follows: "After examining Juan Milanes, I believe he was suffering from mental disease/defect at the time of the commission of the offense and was unable to conform his conduct to the requirements of law, or know right from wrong under the definition of the Wisconsin Statutes." The third letter again describes various symptoms and feelings reported by Milanes, and concludes, "I believe Mr. Milanes would benefit from intensive therapy and pharmacotherapy because of the above mentioned symptoms."

¶ 7. The report from the State's psychological expert contains a great deal more information and unsurprisingly reaches a conclusion opposite that of the plaintiff's expert regarding Milanes' legal culpability. It also states that Milanes admitted to the author that he committed some of the acts of which he was accused.

¶ 8. The record also contains two letters to Milanes' attorney from his personal physician, who states that Milanes "showed depression, confabulation and mental disorders that suggested Schizophrenia. He was treated with antidepressants and tranquilizers and advised to see a Psychiatrist, he did not comply. In my opinion this patient is in dire need of psychiatric help."

¶ 9. Milanes' attorney also filed a motion to suppress his confession on the grounds that it was coerced and that it was a result of custodial interrogation without the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). In the attached affidavit, Milanes stated that he was born in Cuba, that he had served as a security officer for the government there, and that he had eventually defected to the United States. He stated that he believed that he would be put to death should he be deported back to Cuba. He claimed that the detective who had interrogated him and received his confession had told him that if he did not confess, he would be sent back to Cuba. It was this fear, according to Milanes, that led him to falsely confess to the charged offenses.

¶ 10. The suppression motion was eventually scheduled for argument prior to jury selection for Milanes' trial. However, before the trial date, the State offered a plea deal which Milanes accepted. Several of the charges were dismissed and read in in exchange for Milanes' no contest plea to the others, with both parties free to argue sentencing. Milanes was convicted and

sentenced to a total of nineteen years in prison and twenty-six years of extended supervision.

¶ 11. Milanes obtained new counsel and filed a motion for postconviction relief under WIS. STAT. § 974.06 in the circuit court. Milanes claimed there that his trial counsel had been ineffective because he had failed to adequately investigate the admissibility of the confession. The circuit court held a *Machner*[2] hearing, at which Milanes' new counsel questioned his trial counsel as to the trial counsel's representation of Milanes. Relevant excerpts of that hearing follow:

Q. So when Mr. Milanes told you that the police had essentially coerced a confession from him, did you believe what he was telling you?

A. No.

Q. Did you believe that he would be deported back to Cuba?

A. No.

Q. So essentially you did not believe what Mr. Milanes was telling you?

A. I did not believe that [the detective] threatened him with deportation back to Cuba if he didn't make the statement. That is what Mr. Milanes claimed but I did not believe it.

Q. Did you investigate that matter?

A. I listened to Mr. Milanes. I read the report of [the detective]. There was nothing else to look at.

Q. So to your knowledge, no other investigation was necessary?

---

[2] *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

A. That's all there was on that particular point.

Q. Was there any information that you had that led you to not believe what Mr. Milanes was saying?

A. I think it was a matter of credibility.

Q. Could you have checked certain records to maybe corroborate his story?

A. There were no records, such records to check.

Q. Could you check any information that he disclosed to you as to whether—

A. There was absolutely—

Q. — he may have been threatened?

A. There was no verification whatsoever what he said as far as being threatened with Cuba deportation.

The circuit court denied Milanes' motion. Milanes appeals.

¶ 12. On appeal, Milanes renews his claim that he should be allowed to withdraw his plea because he did not receive effective assistance of counsel. A defendant wishing to withdraw a guilty or no contest plea after sentencing must establish by clear and convincing evidence that withdrawal is necessary to correct a manifest injustice. *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997). The decision to allow a plea withdrawal rests in the circuit court's discretion, and we will reverse only where the circuit court has failed to exercise that discretion properly. *Id.*

██

¶ 13. A valid guilty or no contest plea waives all nonjurisdictional defenses to a conviction, including constitutional violations. *See State v. Riekkoff*, 112 Wis. 2d

691

119, 122–23, 332 N.W.2d 744 (1983). One exception to this rule is the claim of ineffective assistance of counsel under the Sixth Amendment. *State v. Kelty*, 2006 WI 101, ¶ 43, 294 Wis. 2d 62, 716 N.W.2d 886. Thus, though Milanes' underlying claims involve a Fifth Amendment violation and a statutory defense, the ultimate question on this appeal is not whether these claims were valid, but whether his counsel was ineffective in his handling of them.

¶ 14. Wisconsin applies the two-part test for ineffective assistance of counsel found in *Strickland v. Washington*, 466 U.S. 668, 687 (1984); in order to show ineffective assistance of counsel, Milanes must prove both that trial counsel's performance was deficient and that the deficiency prejudiced his defense. *See State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). To meet the deficiency prong, the defendant must show that counsel's conduct fell below an objective standard of reasonableness. *State v. Thiel*, 2003 WI 111, ¶ 19, 264 Wis. 2d 571, 665 N.W.2d 305.

¶ 15. Milanes urges that his trial counsel should have further investigated his claim that his confession was coerced and that he was not given his *Miranda* warnings. As the hearing testimony shows, however, Milanes' story and that of the detective were contradictory. Milanes' trial counsel testified that there was no documentary evidence on this point, and Milanes has given us no reason to think that this is not the case. Instead, Milanes urges that his counsel should have gone ahead with the suppression hearing, claiming that the evidence would have been developed there. We doubt whether a suppression hearing is reasonably characterized as "investigation" in the sense that the term is used in discussing ineffective assistance of

counsel. However, the classification of counsel's claimed error is not the essential problem with Milanes' argument. The fatal deficiency is that Milanes presents his claim as if it were a certainty that a suppression motion would have succeeded. This is plainly not the case. The issue would have been determined by an assessment of the credibility of Milanes' story versus the credibility of the detective's. The suppression motion might well have failed.

¶ 16. Further, in order to pursue the motion, counsel would have had to reject the State's plea offer, since it was to expire before the suppression hearing's scheduled date. Milanes and his trial counsel thus needed to make a strategic decision. On the one hand, Milanes could pursue the suppression motion, which would turn on Milanes' credibility against that of the detective. On the other, he could accept the plea bargain, reduce his total exposure, and hope to receive a light sentence. Milanes and his counsel chose the latter course.[3]

---

[3] Milanes claims that his counsel never informed him of possibilities other than that of pleading guilty. At the *Machner* hearing, the attorney testified:

> I felt the evidence was very strong in the case and that [the plea bargain] was his best option under the circumstances.
>
> Q. Did you discuss that with Mr. Milanes?
>
> A. Yes.
>
> Q. How would you describe that conversation? Very brief? In depth?
>
> A. No. I think we fully—we had fully discussed the strengths and weaknesses of this case from the very beginning and he I think recognized that and based on that recognition agreed that the plea bargain was the best route under the circumstances.

The circuit court implicitly accepted the trial counsel's version of events, stating at the end of the hearing that Milanes'

¶ 17. Milanes now argues that his counsel steered him wrong in this decision and that he should therefore be allowed to withdraw his plea. However, as the United States Supreme Court stated in *McMann v. Richardson*, 397 U.S. 759, 769–71 (1970):

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.
>
> . . . .
>
> In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession. Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.

*McMann* has long been the law of the United States. While it does not appear that the Wisconsin courts have yet decided a case based upon *McMann*'s reasoning on

---

plea had been free and voluntary. Since this finding rests on a credibility determination, we must uphold it unless it is clearly erroneous. *State v. Thiel*, 2003 WI 111, ¶ 23, 264 Wis. 2d 571, 665 N.W.2d 305; *State v. Provo*, 2004 WI App 97, ¶ 19, 272 Wis. 2d 837, 681 N.W.2d 272, *review denied*, 2004 WI 123, 275 Wis. 2d 296, 687 N.W.2d 523. It is not clearly erroneous.

this point, the scope, extent, and interpretation of the right to counsel under the Wisconsin and United States Constitutions are identical. *State v. Polak*, 2002 WI App 120, ¶ 8, 254 Wis. 2d 585, 646 N.W.2d 845. For this reason, even if we were to believe that Milanes was correct that his confession would likely have been suppressed (and that he would not have been convicted without it) this would not necessarily entitle him to withdraw his plea. The question is not whether Milanes' counsel's advice that Milanes should plead guilty is the same advice we would have given, but "whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 770–71. Given the risk involved in rejecting the State's plea offer and the limited chance of success at a suppression hearing, we hold that Milanes' counsel easily met that standard.

██

¶ 18. Milanes attempts to circumvent *McMann* by claiming that this case contains an element in addition to his allegedly coerced confession.[4] Milanes argues that he was mentally ill at the time of his plea, and that he therefore lacked the capacity to make the decision to plead guilty knowingly, voluntarily and intelligently, as the law requires. *State v. Bangert*, 131 Wis. 2d 246, 257, 389 N.W.2d 12 (1986). Milanes relies on the reports submitted by his psychiatric expert and his personal physician. Though those reports do state that Milanes is mentally ill, they do not to us appear even to begin to show that he was unable to understand the constitu-

---

[4] The facts of *McMann* also involved additional claims, but the Supreme Court addressed only the question of the withdrawal of a guilty plea on the basis of an involuntary confession. *McMann v. Richardson*, 397 U.S. 759, 774–75 (1970).

tional rights he was relinquishing or the nature of the crimes to which he was pleading. *See State v. Brandt,* 226 Wis. 2d 610, 618, 594 N.W.2d 759 (1999). Further, Milanes signed the plea questionnaire and waiver of rights form which specifically affirmed that he understood both. The record on appeal does not include a transcript of the plea hearing, and so we must assume that the circuit court conducted a proper colloquy, which would also have required Milanes to demonstrate his understanding of the meaning and consequences of his plea. *See State v. Provo,* 2004 WI App 97, ¶ 19, 272 Wis. 2d 837, 681 N.W.2d 272 ("It is the appellant's responsibility to ensure completion of the appellate record and 'when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling.' ") (citation omitted), *review denied,* 2004 WI 123, 275 Wis. 2d 296, 687 N.W.2d 523. We see nothing in this case to distinguish it from *McMann.*

¶ 19. Nor can we see any grounds for plea withdrawal in Milanes' claim that his attorney should have further pursued a defense of mental disease or defect. WISCONSIN STAT. § 971.15(1) provides that "[a] person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law." "Mental disease or defect excluding responsibility is an affirmative defense which the defendant must establish to a reasonable certainty by the greater weight of the credible evidence." Sec. 971.15(3). The evidence in support of Milanes' claim is remarkably weak; the strongest piece of evidence is the report of his psychiatric expert, which contains a conclusory statement that Milanes meets the

statutory requirements. We will not discuss this issue in detail, but only note that Milanes' argument on it fails for the same reason that his argument about the allegedly coerced confession did: the trial counsel was objectively reasonable in concluding that such a defense was highly unlikely to succeed, and Milanes would be better off pleading no contest. Since we have found that Milanes' counsel's performance was not deficient, we need not address the prejudice prong of the ineffective assistance test. *See Strickland*, 466 U.S. at 697.

■

¶ 20. Milanes finally contends that he could not understand his plea or its consequences because he is only fluent in Spanish and his trial counsel was only fluent in English. The record in this case contains several references to and examples of Milanes speaking and corresponding in English. The police report notes that Milanes "speaks broken English but has an excellent understanding of English." One of the expert reports noted that Milanes "both spoke Spanish and English rather well" though he was more comfortable with Spanish. Milanes spoke to the court at his sentencing hearing in garbled but understandable English. Milanes has presented no evidence whatsoever that any language difficulty made him incapable of understanding his plea and its consequences, and the record supports the trial court's finding: "I never noticed that Mr. Milanes had any difficulty understanding the English language when I spoke with him."

¶ 21. We finally note the irony that Milanes' claim of ineffective assistance of counsel has been a source of great frustration to us due to the practices of his appellate counsel. On first filing this appeal, appellate counsel submitted a brief whose facts were not cited to the record, as required by WIS. STAT. RULE 809.19(1)(d).

The appeal was premature, since appellate counsel had neglected to obtain the final order necessary for this court to exercise jurisdiction, and so we rejected the brief and ordered appellate counsel to submit a new one at the appropriate time containing citations to the record. Appellate counsel responded by submitting a brief containing record cites; however, many of the citations simply reference her motion and memorandum of law to the circuit court, which itself contains factual citations only to an attached affidavit of Milanes. Appellate counsel did not provide pinpoint citations within the nearly thirty-page document. Further, appellate counsel cited an unpublished case in her opening brief, contrary to WIS. STAT. RULE 809.23(3). This does not appear to be inadvertent, since the citation ends with the parenthetical "(unpublished)." Our supreme court has reasoned that the rule against citing unpublished cases is essential to the reduction of the overwhelming number of published opinions and is a necessary adjunct to economical appellate court administration. *Tamminen v. Aetna Cas. & Sur. Co.*, 109 Wis. 2d 536, 563, 327 N.W.2d 55 (1982). Unless and until the nonpublication rule is changed, violations of this rule will not be tolerated. *See id.* We therefore impose a $50 fine on Milanes' appellate counsel and direct the sum to be paid to the clerk of this court within twenty days of the date this opinion is released.

*By the Court.*—Order affirmed.