COURT OF APPEALS
DECISION
DATED AND FILED

July 15, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP950-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2016CF72**

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JIMMY D. MCDANIEL,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Crawford County: LYNN M. RIDER, Judge. *Affirmed.*

Before Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jimmy McDaniel was convicted, after a jury trial in the Crawford County Circuit Court, of first-degree reckless homicide and

strangulation of Linda Kline. McDaniel appeals the circuit court's rulings concerning: an evidentiary objection at trial; the circuit court's denial of his request for postconviction discovery; and the circuit court's denial of his postconviction motion for a new trial based on the purported ineffective assistance of his trial counsel. For the following reasons, we affirm the rulings of the circuit court.

## BACKGROUND

¶2 The State charged McDaniel with first-degree reckless homicide in violation of WIS. STAT. § 940.02(1) (2019-20)[1], and strangulation in violation of WIS. STAT. § 940.235(1). The following is pertinent evidence adduced at the trial of this matter.

¶3 McDaniel and Kline were in a romantic relationship and, as of early October 2016, lived with Kline's sister, Michelle Little, and her husband, Holly Little. McDaniel and Kline shared a bedroom in the Littles' basement.

¶4 In the early morning of October 6, 2016, Prairie du Chien Police Officer Berg was dispatched to the Little residence. Behind the house, Berg saw a man kneeling, but not moving, with his back toward Berg. When the officer turned on his flashlight, the man (whom Berg later identified as McDaniel) began to perform what may have been chest compressions on a woman's body. As Berg

---

[1] McDaniel was charged, and the trial of this matter took place, when the 2015-16 statutes were in effect. However, those statutes which form a basis for the charges, and the Wisconsin Rules of Evidence mentioned later in this opinion, relevant to this appeal are materially unchanged from the 2015-2016 statutes to the current 2019-20 version. Thus, all subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

approached, he saw that the woman he later identified as Kline was "blue and black in the face" and also noted that the woman was "cold to the touch."

¶5 At the scene, McDaniel provided to law enforcement information about events of October 5, 2016, and we now summarize McDaniel's relevant statements. At approximately 8:00 p.m., Kline complained of pain and McDaniel brought Kline an Oxycodone pill.[2] Kline then told McDaniel that she was going to return to the yard of the house to continue work the two had done earlier in the day. McDaniel told Kline that he was going to bed and went to their room where he played a game on his phone. About ten to fifteen minutes later, McDaniel left the bedroom. Thinking that Kline had gone outside, McDaniel yelled for her on the patio but received no response. McDaniel returned to the house and checked the garage for Kline. Not finding her there, McDaniel went to the back yard and saw Kline's body hanging from a post with a cord around her neck. McDaniel "untied the knot" on the cord and "took her down."

¶6 Lieutenant Investigator Fradette from the Crawford County Sheriff's Department arrived on the scene after Officer Berg. Fradette saw Kline lying near an approximately six-foot-high four-by-four post, which was topped by a two-by-two crosspiece. Two bird feeders, a flowerpot, and an extension cord hung from the post. Based on his observations, Fradette came to the conclusion at that time that the post could not support the weight of an adult woman such as Kline. Holly

---

[2] Kline was injured in an ATV accident months before her death and was undergoing treatment and experiencing pain from that accident at the time of her death.

Little testified that the post was rotten, weathered, old, and split before the night of Kline's death.[3]

¶7 Doctor Michael Stier, a professor of pathology at the University of Wisconsin Medical School, conducted an autopsy on Kline. Stier testified extensively at trial regarding the autopsy and its results, and his pertinent testimony is summarized here. Stier began the autopsy believing that Kline had hanged herself. However, in Stier's view, the autopsy revealed instead that Kline died of manual strangulation; Stier found no signs of hanging.

¶8 Stier stated that, when a person dies from hanging, the body is marked by a ligature furrow. Kline's body lacked any such mark. Stier also explained that, in hangings, a body will not have petechiae.[4] But, Kline had petechiae all over her face. He also testified that Kline's body was riddled with contusions, which reflected that she had suffered from extensive blunt trauma. According to Stier, Kline suffered from a "cut and dry, clear-cut manual strangulation" and there was "zero component of hanging." He described how Kline's body showed signs that she fought back against her attacker, including bruising on her arms.

¶9 McDaniel presented testimony at trial from a different pathologist, Dr. Carl Wigren, who testified that, in his opinion, there were indications of

---

[3] Michelle Little died shortly before the trial in this matter began.

[4] "Petechia" is defined in the Oxford English Dictionary online as: "A small, flat, red or purple spot caused by bleeding into the skin or other organ." *Petechia*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/view/Entry/141816 (last visited July 9, 2021). "Petechiae" is the plural form. *Id.*

Kline's suicide by hanging. Further, according to Wigren, petechiae may be present on a body when there is a hanging.

¶10 The jury found McDaniel guilty of first-degree reckless homicide and strangulation.

¶11 McDaniel requested postconviction relief in the form of postconviction discovery and a new trial based on the purported ineffective assistance of his trial counsel. The circuit court denied McDaniel's request for postconviction discovery and concluded that McDaniel's trial counsel was not ineffective. McDaniel appeals.

¶12 Other material facts will be discussed later in this opinion.

## DISCUSSION

¶13 McDaniel raises three principal issues in this appeal. First, he argues that the circuit court erred in not excluding a portion of the testimony from Kline's mother. Second, McDaniel argues that the circuit court erred in denying his request for postconviction discovery. Third, McDaniel alleges that his trial counsel was constitutionally ineffective in not objecting to or moving to strike evidence, and in not making pre-trial discovery requests identical to his postconviction discovery requests. We address each issue in turn.

### I. Circuit Court's Evidentiary Ruling.

¶14 McDaniel argues that the circuit court erred in overruling his objection to testimony elicited on direct examination by the State from Colleen Munz, Kline's mother.

¶15    A circuit court's decision to admit or exclude evidence is reviewed as a matter of the circuit court's discretion. *Weborg v. Jenny*, 2012 WI 67, ¶41, 341 Wis. 2d 668, 816 N.W.2d 191.  This court "will sustain an evidentiary ruling if it finds that the circuit court examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." *State v. Sullivan*, 216 Wis. 2d 768, 780-81, 576 N.W.2d 30 (1998).

¶16    As background, we note that, when Munz received the news that Kline had died, she went to the Littles' home.  When Munz arrived, she saw McDaniel sitting in the house with a deputy.  The State asked the following question at trial, and the transcript reflects only the following:

> [Prosecutor]:  When you first got there, did you see Michelle [(Munz's daughter)]?
>
> [Munz]: When I first got there, I didn't see Michelle, but – I didn't know that [McDaniel] was back in town, and so I seen him sitting in there, and I yelled at him. I said, "You finally – It took you three times, but you finally killed her."
>
> [Trial Counsel for McDaniel]: I'll object to all of this.  This is irrelevant and highly prejudicial.  I don't see the relevance of this testimony.
>
> [Munz]:  I said that myself.
>
> THE COURT:  Why don't [counsel] approach?
>
> (Whereupon, a sidebar was taken off the record and outside the hearing ability of the Jury.)
>
> THE COURT: I'll overrule that objection and allow [the prosecutor] to continue.

Immediately thereafter, in response to the next question from the prosecutor, Munz repeated what she testified was her statement to McDaniel, quoted above.

6

Munz also testified that, after McDaniel heard that statement that night, McDaniel jumped up and "came after" Munz, and a deputy restrained McDaniel.

¶17 Prior to considering McDaniel's arguments, we discuss aspects of the record that are pertinent to our analysis. The State asserts, and McDaniel correctly agrees, that there is no transcript of the sidebar discussion the circuit court had with counsel regarding McDaniel's objection to Munz's testimony. The State contends that it was McDaniel's responsibility to ensure that there is a record of the circuit court's discussion with counsel during the sidebar in order to preserve the objection for review on appeal. According to the State, because McDaniel did not do so, this court must assume that the lack of a transcript supports the circuit court's exercise of discretion in ruling on that objection. *See State v. Provo*, 2004 WI App 97, ¶19, 272 Wis. 2d 837, 681 N.W.2d 272 ("It is the appellant's responsibility to ensure completion of the appellate record and 'when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling.'") (citation omitted).

¶18 Further, McDaniel asserts that the circuit court "did not articulate [its reasoning regarding the ruling on McDaniel's objection] at … the post[]conviction motion hearing." However, to the extent the parties assert that we have no insight into the circuit court's reasoning in making its evidentiary ruling, that is incorrect. The circuit court explained its reasoning, at least in part, at the postconviction hearing:

> Now, [trial counsel for McDaniel] did … object to that testimony [(of Munz described above)] on the grounds of relevancy and undue prejudice ….
>
> I think had … Ms. Munz [said at] the trial [in] an outburst [that McDaniel] had tried to [kill Kline] three

7

> times, … certainly that would not have been admissible testimony and would have been appropriate to strike…. [B]ut I think it was within the context of the whole scene at the home, after police were called, family is called, Mr. McDaniel is questioned, and I believe that the reaction of both Ms. Munz and Mr. McDaniel to the investigation [and] the situation was relevant, and so I did allow that evidence to come in.

As we will discuss shortly, the circuit court's postconviction hearing statements about its reasoning are not a substitute for a record of the sidebar. But, the circuit court's remarks are germane to our analysis. With that in mind, we next discuss McDaniel's arguments.

¶19    First, McDaniel argues that the testimony by Munz in dispute had "probative value" that was "low," and that probative value was "outweighed by the danger of undue prejudice to McDaniel."[5]  The bases for this argument given by McDaniel are, without any further explanation from him, that Munz's testimony "helped establish an atmosphere of unfairness about the trial," "appealed to the jury's passions," and "undermined the integrity of the fact finding process."

¶20    We begin our discussion of McDaniel's argument by considering that there is no record of the statements of counsel during the sidebar at trial at which that objection to the Munz statement was considered. As discussed, we are to assume that missing statements made during the sidebar support the circuit court's exercise of discretion. *See **Provo***, 272 Wis. 2d 837, ¶19.  We have summarized above pertinent comments of the court at the postconviction hearing.

---

[5] We observe that McDaniel's argument misstates the standard enunciated in WIS. STAT. § 904.03.  "[E]vidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice."  Sec. 904.03 (emphasis added).

From the circuit court's comments, two reasonable assumptions can be made about what was said by the State at the sidebar. First, the State informed the circuit court that Munz's statement to McDaniel was relevant because it gave context to McDaniel's aggressive reaction to Munz, which caused a deputy to restrain McDaniel as he moved toward her. Second, the State informed the court that the aggressive reaction from McDaniel toward Munz would be the subject of the State's next question to Munz. With those reasonable assumptions, the circuit court did not erroneously exercise its discretion in determining that the testimony from Munz was relevant and admissible.

¶21 In addition, as pointed out by the State, it is McDaniel's burden to show that the danger of unfair prejudice is substantially outweighed by the probative value of the evidence under WIS. STAT. § 904.03. *See State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399. McDaniel's arguments made in briefing in this court regarding the circuit court's purported erroneous exercise of discretion do not engage with the analysis from the circuit court about why McDaniel's objection to this testimony was overruled. Indeed, McDaniel gives us no more than conclusory assertions about alleged prejudice and makes no attempt to tie his argument to the facts of this case. For that reason alone, we can reject McDaniel's unsupported conclusions. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (stating we need not address insufficiently developed arguments). With that, we agree with the State that McDaniel has failed to meet his burden to show that the circuit court's exercise of discretion in admitting this evidence was improper in light of the requirements of § 904.03.

¶22 Second, with little explanation as to his reasoning, McDaniel argues that Munz's testimony should have been excluded because it was lay opinion

evidence under WIS. STAT. § 907.01 and "merely the uninformed opinion of a relative." However, there is no basis to conclude that the circuit court admitted the testimony as lay opinion evidence. As noted in the circuit court's remarks at the postconviction hearing, what was relevant about Munz's challenged trial testimony was the context of what she testified were her statements to McDaniel on the night of her daughter's death, and his reaction to them, involving "the whole scene at the home" that night. For those reasons, the circuit court did not admit the testimony as lay opinion evidence under § 907.01, and McDaniel's argument fails.

¶23    In sum, we conclude that McDaniel has failed to show that the circuit court's evidentiary ruling was not a proper exercise of discretion. *See Sullivan*, 216 Wis. 2d at 780-81.

## II.  McDaniel's Postconviction Discovery Requests.

¶24    McDaniel argues that the circuit court erred in not granting his request for postconviction discovery. We start our analysis by considering governing principles and our standard of review.

### A.  Governing Principles and Standard of Review.

¶25    A defendant has a right to postconviction discovery "when the sought-after evidence is relevant to an issue of consequence" and there is a reasonable probability that, had the evidence been disclosed to the defense, "the result of the proceeding would have been different." *State v. O'Brien*, 223 Wis. 2d 303, ¶¶24-25, 588 N.W.2d 8 (1999). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*, ¶24. The parties agree

that our standard of review requires us to determine whether the ruling of the circuit court is clearly erroneous. *Id.* at ¶26.

¶26   We next consider the circuit court's rulings on each postconviction discovery request from McDaniel.

## B. Request for Tissue Slides.

¶27   McDaniel requested that the circuit court allow his pathology expert who testified at trial, Dr. Wigren, to examine slides of tissue taken from Kline's body at the autopsy in an attempt to determine the age of bruising on Kline's body found during the autopsy. The circuit court denied the request based on its determination that the age of any bruises on the decedent would not have made any "difference to the jury" in determining any issue of consequence. The State asserts that no tissue samples were taken from bruises on Kline's body during the autopsy and, as a result, the production of the slides would not make a difference regarding the age of the bruises on Kline's body at or around the time of her death. In reply in this court, those factual assertions from the State are not mentioned or rebutted by McDaniel. We could take that failure to attempt to rebut those factual assertions as a concession by McDaniel that the production of the tissue slides would not be relevant to an issue of consequence. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrebutted arguments are deemed conceded).

¶28   As important, the record supports the State's position. Dr. Stier testified at trial that he took samples of tissue from Kline's body and placed those on slides to look for diseases that would be apparent only through microscopic review. The trial testimony of Dr. Wigren shows that Wigren wanted the slides of

tissue from Kline's body to check for fat in Kline's liver. Also, Dr. Wigren testified that Stier never took a tissue sample of any bruise.

¶29 For those reasons, the circuit court properly exercised its discretion in denying McDaniel's request for postconviction discovery of the tissue slides because McDaniel fails to show how the evidence requested could be relevant to an issue of consequence in this action. *See **O'Brien***, 223 Wis. 2d 303, ¶¶24-25.

### C. Request for DNA Testing.

¶30 Second, McDaniel argues that the circuit court erred in denying his request for DNA testing of the electrical cord that was found near Kline when law enforcement arrived on the night of Kline's death. McDaniel's argument is based on the assertion that, if Kline's DNA is found near the knot in the cord, it would help establish that she made the knot and committed suicide. The circuit court denied the request and said:

> So the Court finds that the burden is on the moving party to show that the "Evidence is consequential to an issue in this case, and had the evidence been discovered, the result of the proceeding would have been different."

The court also said:

> Further, with regard to the cord that was alleged to have been used as a ligature, it would make no sense to bother to do DNA testing of that cord because had the DNA of Jimmy McDaniel been present, or had the DNA of Linda Kline been present, it doesn't tell us anything. It tells us they may have used that cord, but they both were residing at that house. So it doesn't make it any more likely that Mr. McDaniel either did commit this offense or did not commit this offense.

¶31 We conclude that McDaniel fails to show that the circuit court did not properly exercise its discretion in denying this request. The court sufficiently

articulated the applicable standards to apply to the request, was aware of the material facts, and came to a conclusion a reasonable judge could make. The court concluded that the likelihood of Kline's DNA being detected on the cord was high because it was in the same house Kline lived in. If Kline's DNA was discovered on the cord, that would not assist in answering whether her death was a suicide. As a result, we agree with the circuit court's determination that McDaniel has not met his burden to show that, had the cord been tested for Kline's DNA, the results of the proceeding would have been different. *See O'Brien*, 223 Wis. 2d 303, ¶¶24-25.

¶32    In sum, we affirm the circuit court's rulings denying McDaniel's requests for postconviction discovery.

### III.  Allegations of Ineffective Assistance of Counsel.

¶33    McDaniel alleges that his trial counsel was constitutionally ineffective in not moving to strike evidence, not making certain evidentiary objections, and not requesting pretrial discovery on the two subjects on which McDaniel requested postconviction discovery. We start by reviewing governing principles and our standard of review.

### A.  Governing Principles and Standard of Review.

¶34    Wisconsin applies a two-part test to evaluate a defendant's claim that his counsel was ineffective. *State v. Roberson*, 2006 WI 80, ¶28, 292 Wis. 2d 280, 717 N.W.2d 111. A defendant must establish both that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If a defendant fails to prove either prong, a court need not address the other. *State v. Floyd*, 2016

13

WI App 64, ¶22, 371 Wis. 2d 404, 885 N.W.2d 156, *aff'd*, 2017 WI 78, 377 Wis. 2d 394, 898 N.W.2d 560.

¶35    In evaluating the prejudice component of ***Strickland***, this court determines whether the defendant has proven that his counsel's errors "actually had an adverse effect on the defense." ***Strickland***, 466 U.S. at 693. A defendant cannot meet this burden by merely showing that the errors had "some conceivable effect on the outcome"; rather, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.*** at 694.

¶36    Appellate review of an ineffective assistance of counsel claim presents a mixed question of fact and law. We will not disturb the circuit court's findings of fact unless those are clearly erroneous. The determination of whether counsel's performance falls below the constitutional minimum is a question of law subject to our independent review. ***State v. Cooks***, 2006 WI App 262, ¶34, 297 Wis. 2d 633, 726 N.W.2d 322.

### B. Motions to Strike and Evidentiary Objection.

¶37    McDaniel argues that trial counsel's representation was deficient regarding Munz's testimony, discussed above, that on the night of Kline's death Munz accused McDaniel of killing Kline. McDaniel notes in briefing in this court that trial counsel properly objected the first time that Munz testified before the jury to making this accusation. Nonetheless, McDaniel contends that trial counsel's performance was deficient because, the first time Munz testified to making the accusation, trial counsel did not in addition move to strike Munz's

answer. In a similar vein, McDaniel argues that trial counsel was ineffective because he did not object to Munz's identical testimony a short time later.

¶38 We reject McDaniel's arguments because, as pointed out by the State, an attorney does not perform deficiently for declining to make an objection that would have failed. *State v. Wheat*, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441. Here, McDaniel makes no attempt to explain why a motion to strike testimony that has been admitted by the circuit court, over an objection, would have any chance of success. Further, in light of the circuit court's reasoning for its evidentiary ruling expressed at the postconviction hearing and the two reasonable assumptions about what the State informed the court during the sidebar as discussed above, McDaniel makes no coherent argument why trial counsel would have reasonably expected that the court would exclude the second piece of testimony on this topic by Munz when shortly before the circuit court allowed that same testimony. In those circumstances, the motion to strike and a further objection would have been fruitless and, as a result, there is no deficient performance on trial counsel's part.

¶39 McDaniel separately argues that trial counsel was ineffective because he did not object to testimony by Munz that McDaniel on appeal categorizes as a statement that McDaniel "flirt[ed]" with Munz. More specifically, Munz testified that, on Mother's Day 2016, she met McDaniel for the first time at a family dinner at a restaurant. At that time, McDaniel tried to kiss Munz, but she told McDaniel, "No." Kline was not present at that time because she was in the hospital due to injuries she suffered from the ATV crash. Later that same day, Michelle Little brought McDaniel to Munz's home, and McDaniel asked Munz if they were going to have a problem when Kline was released from the hospital. When Munz asked McDaniel what he meant, McDaniel replied,

according to Munz, "Well, fighting over me. I thought you'd have a black man by now." At that, Munz testified, she told Michelle Little to take McDaniel out of her home and not to bring him back.

¶40    McDaniel argues that trial counsel should have objected to that testimony. But, other than a generalized statement that this testimony "helped establish an atmosphere of unfairness about the trial," McDaniel gives no basis for this court to conclude that McDaniel was prejudiced by trial counsel's failure to object. In the context of the testimony from Dr. Stier concerning strangulation as the cause of Kline's death, Stier's testimony that Kline fought her attacker, and the physical facts as observed by law enforcement that lead to the conclusion that the post in the yard could not have supported Kline's body, McDaniel has failed to establish that the testimony from Munz alleging "flirting" by McDaniel leads to the conclusion that such evidence made a difference to the result in this case. *See Strickland*, 466 U.S. at 694.

¶41    McDaniel also argues that his trial counsel was ineffective for failing to move to strike testimony elicited on cross-examination of Munz that her daughter, Michelle, told her before Michelle's death that McDaniel had threatened Michelle. More particularly, Munz testified that, when Munz asked Michelle why she had not told Munz about the ATV crash sooner, Munz "was told the reason why she did not tell [her] is because [McDaniel] threatened [Michelle]." Again, the only prejudice alleged by McDaniel is that counsel's failure to have the testimony stricken "helped established an atmosphere of unfairness about the trial." McDaniel's burden to show prejudice from trial counsel's purported deficiency fails in this instance for the same reasons just discussed. McDaniel gives us no basis to conclude that, in light of the strength of other incriminating evidence, this testimony from Munz made a difference to the result.

16

## C. Pretrial Discovery Requests.

¶42 Finally, McDaniel argues that his trial counsel was ineffective for not requesting pretrial the slides of tissue removed from Kline's body during the autopsy and not requesting DNA testing of the area of the cord near where the knots were found. However, as already discussed, the slides of tissue and DNA testing would not have made a difference to any consequential issue in this matter. It then follows that there is no prejudice to McDaniel in his trial counsel not requesting that discovery pretrial.

¶43 In sum, we affirm the circuit court's ruling that McDaniel has not established that his trial counsel was constitutionally ineffective.

## CONCLUSION

¶44 For the foregoing reasons, we affirm the judgment of conviction and the postconviction rulings of the circuit court.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.