# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 28, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2023AP1063-CR**
**2023AP1064-CR**
**2023AP1065-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. **2015CF4868**
**2016CF1004**
**2015CF3367**

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ANTONIO MARQUES SMITH,

DEFENDANT-APPELLANT.

APPEAL from judgments and an order of the circuit court for Milwaukee County: M. JOSEPH DONALD and JANET C. PROTASIEWICZ, Judges. *Affirmed*.

Before White, C.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Antonio Marques Smith appeals his judgments of conviction for one count of first-degree intentional homicide using a dangerous weapon; one count of first-degree intentional homicide using a dangerous weapon, as a party to a crime; and one count of conspiracy to commit first-degree intentional homicide using a dangerous weapon. He also appeals the order denying his postconviction motions. We affirm.

## BACKGROUND

¶2 The homicide charges against Smith stem from two shooting deaths in July 2015. Eddie Powe was shot on July 11, 2015, by a man he identified as "Tone." Powe later died while undergoing surgery for his gunshot wounds.

¶3 Police interviewed J.S., who witnessed the shooting.[1] J.S. stated that he had observed Powe arguing with a man, who then pulled out a gun and shot Powe. J.S. was taken into custody and charged with being a felon in possession of a firearm.

¶4 Powe's girlfriend, Breanna Eskridge, was also present when Powe was shot. Approximately one week after Powe was killed, Eskridge was shot and killed on the front porch of a residence. Two people who had been with her just before the shooting told police they had noticed a blue Chevy Impala following them. Police traced the vehicle and found it was registered to Smith.

---

[1] J.S. was also the victim in the charge against Smith of conspiracy to commit first-degree intentional homicide. We therefore identify him by his initials. *See* WIS. STAT. RULE 809.86(4).

¶5 Detectives presented a photo array to J.S., which included Smith, and J.S. identified Smith as Powe's shooter. Smith was arrested in August 2015.

¶6 While Smith was in jail, he was observed on a recorded video chat discussing the strength of his defense for Powe's homicide. Smith was heard saying that J.S. was the only person who identified Smith as being at the scene of that shooting. Subsequently, calls were recorded where Smith was heard plotting with his girlfriend and co-conspirator, Shantrell Lyons, about posting bail for J.S. and then killing him when he was released.

¶7 This plot was put into motion when another co-conspirator, Lorenzo Beaton, posted J.S.'s bail. Detectives spotted Beaton and Lyons in a vehicle parked outside of the Criminal Justice Facility when J.S. was about to be released. The detectives were able to intercept J.S. and move him to a secure location. The same vehicle was later spotted in front of J.S.'s residence. Police were called to the residence, and the vehicle fled. Beaton and Lyons were arrested the next day, along with another co-conspirator, Shaheem Smith, Smith's nephew.[2]

¶8 Smith was ultimately charged with multiple counts in three separate cases, including first-degree intentional homicide using a dangerous weapon for the shooting death of Powe; first-degree intentional homicide using a dangerous weapon, as a party to a crime, for the shooting death of Eskridge; and conspiracy to commit first-degree intentional homicide using a dangerous weapon for the plot against J.S. The three cases were joined for trial, and Smith was tried with Shaheem.

---

[2] We refer to Smith's nephew as Shaheem.

¶9    The trial began in February 2017.  During the second week of trial, an issue arose involving a cell phone belonging to Smith.  Early in the discovery process, police constructed maps from the information obtained from the cell phone showing the phone's location at the time of each shooting.  These maps, which showed that Smith's phone was not at the scene of Powe's shooting, were provided to the defense prior to trial.

¶10    Smith wanted to present these maps as potentially exculpatory evidence.  As such, the parties stipulated to the admission of the cell phone records underlying the maps prior to trial.  However, during the second week of trial, it was discovered that additional maps constructed from that cell phone information showed that Smith's cell phone was actually in the vicinity of the homicide scene at the time of Powe's shooting.[3]

¶11    Smith moved for a mistrial or, in the alternative, for an order excluding the evidence.  In opposition to the motions, the State asserted that neither the prosecutor nor the detectives involved in the case were aware of the information in the additional maps prior to the second week of trial.  The State further argued that Smith had notice of the evidence because the raw data from the cell phone had been timely provided to the defense, and the maps were referenced on the State's discovery list.  The trial court denied Smith's motions, emphasizing that the cell phone data, as timely provided to Smith, was not inaccurate.

---

[3] The trial court explained that the issue with the maps was the result of a "misinterpretation" of the cell phone data, relating to the calculation of the time Smith's phone was at a particular location.

The Honorable M. Joseph Donald presided over Smith's trial, accepted his pleas, and imposed his sentences.  We refer to him as the trial court.

¶12    Smith then opted to resolve the cases with pleas.  In exchange for Smith's pleas to the two counts of first-degree intentional homicide and the count of conspiracy to commit first-degree intentional homicide, the other charges against Smith in all three cases—a total of nine counts—were dismissed, to be read in for purposes of sentencing.  In addition, the State agreed to "make a good faith effort" to have Smith transferred to a federal prison.  Furthermore, Smith's plea negotiations included a provision relating to a separate plea deal being negotiated with Shaheem, in which the State agreed it would make no specific sentencing recommendation for Shaheem.

¶13    Prior to sentencing, and with new counsel, Smith filed a motion in July 2017 for plea withdrawal.[4]  In that motion, he argued that his previous trial counsel was ineffective for not suggesting a new strategy, such as self defense, after the inculpatory cell phone mapping evidence was discovered.  At the hearing on the motion, Smith's new counsel presented several other arguments orally:  that during the plea colloquy, the trial court had not informed Smith that the life sentences for the first-degree intentional homicide charges were mandatory; that Smith's previous counsel did not advise him that he could not appeal the trial court's ruling about the cell phone evidence after entering guilty pleas; that the plea agreement was breached because Shaheem was not released from custody; and that Smith's trial counsel pressured him into taking the plea agreement.

¶14    The trial court denied the motion, determining that Smith had not established a fair and just reason for plea withdrawal.  The matter therefore

---

[4] Smith's motion for plea withdrawal referenced only the case relating to Powe's homicide.

proceeded to sentencing, where the trial court imposed two consecutive life sentences plus five years for the homicide charges with the use of a dangerous weapon enhancer, and a consecutive sixty-five year term, which included forty years of initial confinement, for the conspiracy to commit homicide charge.

¶15    Smith filed a postconviction motion in July 2019 seeking to withdraw his pleas. He argued that his trial counsel was ineffective for allegedly telling Smith that he could appeal the trial court's denial of his motion for a mistrial based on the issue of the cell phone mapping evidence, even after entering guilty pleas. He also argued that the State had breached the plea agreement regarding his transfer to a federal prison and with regard to Shaheem's sentence.

¶16    Smith also filed a supplemental postconviction motion in November 2020. In that motion, Smith alleged prosecutorial misconduct regarding the State's failure to timely disclose the inculpatory cell phone mapping evidence. Additionally, Smith argued that the State "intercepted" a letter from Smith to his trial counsel dated October 2016—prior to the start of his trial—which contained a discussion of Smith's trial strategy relating to the cell phone maps. The letter was forwarded to the prosecutor via an email from the institution where Smith was incarcerated, due to a court order restricting Smith's communications.

¶17    The prosecutor stated he did not read the letter. He informed the institution that the letter appeared to be privileged and therefore was not subject to the court order, and that it should not have been sent to him. He also immediately notified Smith's trial counsel of the incident, and brought it to the trial court's attention. Smith, however, argued in his supplemental postconviction motion that the prosecutor had "utilized" the information in the letter in his prosecution of Smith, which constituted prosecutorial misconduct.

6

¶18 During the evidentiary hearing on the motions, numerous witnesses testified, including Smith; his trial counsel; Smith's mother and sister, with regard to statements allegedly made to them by counsel that Shaheem would not have to go to prison; District Attorney John Chisholm, with regard to Smith's claim that he was to be transferred to federal prison; two investigators who were involved in the preparation of the maps from the cell phone data; and the prosecutor who Smith accused of misconduct.

¶19 The postconviction court[5] rejected Smith's arguments and denied his postconviction motions in their entirety. This appeal follows. Additional facts will be discussed below as needed.

## DISCUSSION

¶20 On appeal, Smith seeks to withdraw his pleas. In seeking plea withdrawal after sentencing, a defendant "must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted). One way to establish a manifest injustice is to show that the plea was not knowingly, intelligently, and voluntarily entered, because when a plea does not meet this standard it "violates fundamental due process." *State v. Johnson*, 2012 WI App 21, ¶8, 339 Wis. 2d 421, 811 N.W.2d 441 (citation omitted). Another means of demonstrating a manifest injustice is by proving ineffective assistance of counsel. *State v. Taylor*, 2013 WI 34, ¶49, 347 Wis. 2d 30, 829 N.W.2d 482.

---

[5] The Honorable Janet C. Protasiewicz heard and decided Smith's postconviction motions. We refer to her as the postconviction court.

7

¶21     "Whether a plea is knowing, intelligent, and voluntary is a question of constitutional fact." *Brown*, 293 Wis. 2d 594, ¶19.  This court will not disturb findings of historical and evidentiary facts unless they are clearly erroneous, but we review *de novo* whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary.  *Id.*

¶22     Smith's arguments for plea withdrawal on appeal renew the arguments he made in his postconviction motions.  They include (1) ineffective assistance by his trial counsel for allegedly advising Smith incorrectly about his ability to appeal, after entering guilty pleas, the trial court's rulings regarding the cell phone mapping evidence; (2) a material breach of the plea agreement regarding the terms relating to Smith's transfer to a federal prison and Shaheem's sentence; and (3) prosecutorial misconduct regarding the alleged untimely disclosure of the cell phone mapping evidence, and relating to the letter from Smith to his trial counsel that was erroneously sent to the prosecutor. Additionally, Smith raises a claim from his presentencing motion to withdraw his pleas:  that the plea colloquy was deficient because the trial court did not inform him that the life sentences for the intentional homicide charges were mandatory. We begin our discussion with that claim.

*Plea Colloquy Deficiency*

¶23     Smith is seeking an evidentiary hearing with regard to his claim that the plea colloquy was deficient due to the trial court's failure to explain that imposing life sentences was mandatory for the intentional homicide charges.  To make a *prima facie* case for plea withdrawal, the defendant must show that his or her plea did not conform to the requirements of WIS. STAT. § 971.08 "or other mandatory procedures" for accepting a plea.  *State v. Bangert*, 131 Wis. 2d 246,

274, 389 N.W.2d 12 (1986). "A plea will not be voluntary unless the defendant has a full understanding of the charges against him [or her]." *Id.* at 257. This includes the "range of penalties" involved. *Brown*, 293 Wis. 2d 594, ¶52.

¶24 In order to warrant a *Bangert* evidentiary hearing, however, the defendant must not only identify a deficiency in the plea colloquy, he must also "allege he did not enter a knowing, intelligent, and voluntary plea *because* he did not know or understand information that should have been provided at the plea hearing." *Brown*, 293 Wis. 2d 594, ¶59. In other words, the defendant "must identify deficiencies in the plea colloquy, state what he did not understand, and connect his lack of understanding to the deficiencies." *Id.*, ¶67.

¶25 Smith's claim does not meet this criteria. He does not allege—either in his presentence motion for plea withdrawal or on appeal—that he did not know or understand that the life sentences were mandatory for the intentional homicide charges. Furthermore, Smith had the opportunity to more fully develop this claim during the evidentiary hearing that was held on his postconviction motions. Both he and his trial counsel testified at that hearing, and potentially could have provided testimony regarding Smith's lack of understanding of the penalty for the homicide charges. However, Smith did not even attempt to elicit testimony at that hearing to develop this claim.

¶26 A defendant is "obligated to provide the [trial] court with objective facts to support his allegation regarding his subjective decision-making about entering the plea agreement." *State v. Jeninga*, 2019 WI App 14, ¶21, 386 Wis. 2d 336, 925 N.W.2d 574. Smith did not provide such facts to the trial court at the hearing on his presentence plea withdrawal motion. Furthermore, he did not elicit any testimony on this issue at his postconviction hearing for review in this

appeal. Without this information, there is "an insufficient basis to meaningfully assess [Smith]'s claim." *See* *id.*

¶27 "In the absence of a claim by the defendant that he lacked understanding with regard to the plea, any shortcoming in the plea colloquy is harmless." **Brown**, 293 Wis. 2d 594, ¶63. We therefore reject Smith's claim that the deficiency in the plea colloquy relating to the mandatory nature of the life sentences warrants a **Bangert** evidentiary hearing. *See* **Brown**, 293 Wis. 2d 594, ¶59.

*Ineffective Assistance of Counsel*

¶28 Next, Smith claims that he is entitled to plea withdrawal because his trial counsel was ineffective. *See* **Taylor**, 347 Wis. 2d 30, ¶49. To prove ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. **Strickland v. Washington**, 466 U.S. 668, 687 (1984). The defendant must prove both prongs of this test or the claim fails. **Id.** In our review of an ineffective assistance claim, we will uphold factual findings unless they are clearly erroneous; the question of whether counsel's performance was deficient and whether the defendant was prejudiced are questions of law that we decide *de novo*. **State v. Hunt**, 2014 WI 102, ¶22, 360 Wis. 2d 576, 851 N.W.2d 434.

¶29 Smith testified at the postconviction hearing that his trial counsel erroneously advised him that he could appeal the trial court's ruling regarding the cell phone mapping evidence—specifically, the trial court's denial of Smith's motion for a mistrial—even after entering guilty pleas. Smith argues that this misinformation was deficient performance on the part of trial counsel.

¶30 To demonstrate deficient performance, a defendant must show that counsel's performance fell below an "objective standard of reasonableness." ***Strickland***, 466 U.S. at 688. In support of his claim, Smith points to a memorandum filed by counsel approximately two months after Smith entered his guilty pleas, regarding the arguments and rulings relating to the issue of the mapping evidence raised during the trial. Smith contends that this filing corroborates his claim that his trial counsel thought he could appeal the ruling because "there was no other reason to file such a memorandum except for appellate purposes."

¶31 In contrast, Smith's trial counsel testified at the postconviction evidentiary hearing that he would not have informed Smith that he could appeal after entering guilty pleas, because the guilty plea waiver rule would preclude such an appeal.[6] Furthermore, counsel explained that he filed the memorandum to ensure there was a proper record of events, due to the "unusual" nature of Smith entering a guilty plea well into the trial. He also noted that Smith had asked him to withdraw from representing him, so counsel did not believe he would have an opportunity to make a record of the issue at a future hearing.

¶32 The postconviction court found trial counsel's testimony credible, and Smith's testimony not credible. Our standard of review requiring us to accept the postconviction court's factual findings unless they are clearly erroneous also

---

[6] The guilty plea waiver rule states that generally, entering a guilty plea "waives all nonjurisdictional defects, including constitutional claims[.]" ***State v. Kelty***, 2006 WI 101, ¶18, 294 Wis. 2d 62, 716 N.W.2d 886 (citation omitted; brackets in ***Kelty***).

applies to its credibility determinations.  *See* **State v. Jenkins**, 2007 WI 96, ¶33, 303 Wis. 2d 157, 736 N.W.2d 24.

¶33    Based on the findings of the postconviction court, Smith has not established that his trial counsel was deficient.  *See* **Strickland**, 466 U.S. at 688. Therefore, Smith's ineffective assistance claim fails.  *See* **id.** at 687.

*Breach of Plea Agreement*

¶34    Next, Smith argues that he is entitled to plea withdrawal because the State materially breached the plea agreement.  "A material and substantial breach … amounts to a manifest injustice" that requires "the vacating of the plea agreement and the withdrawal of the plea[.]" **Bangert**, 131 Wis. 2d at 289.  We review the trial court's findings of facts regarding the plea agreement and the State's conduct under the clearly erroneous standard; however, whether the State's conduct constitutes a substantial and material breach of the plea agreement is a question of law that we review *de novo*.  **State v. Williams**, 2002 WI 1, ¶20, 249 Wis. 2d 492, 637 N.W.2d 733.

¶35    Smith argues the breach occurred on two fronts: (1) the State's failure to make good faith efforts to transfer Smith to a federal prison; and (2) the State's failure to ensure that Shaheem would not go to prison.  Testimony was heard regarding both of these allegations at the postconviction hearing.

¶36    First, with regard to Smith's transfer to federal prison, the record indicates that the plea agreement required the State to make a "good faith effort" to obtain a transfer for Smith to federal prison.  District Attorney Chisholm testified that good faith efforts had been made to explore the possibility of moving Smith to federal prison, pointing to emails he exchanged with the Department of

Corrections (DOC). However, Attorney Chisholm stated that in March 2019, the DOC told him that Smith had indicated that he no longer wished to be transferred; therefore, Attorney Chisholm believed the State's good faith obligations had been fulfilled. Attorney Chisholm stated that he would have "absolutely no problem[]" contacting the DOC and renewing the request to explore a transfer to federal prison for Smith.

¶37    With regard to the plea agreement provisions relating to Shaheem's sentence, Smith asserts that Shaheem was to receive "no incarceration time" under the agreement.[7]    Smith's mother and sister testified at the postconviction evidentiary hearing that Smith's trial counsel told them this. Additionally, Smith testified that the prosecutor told him directly that Shaheem would not be sent to prison. However, the record indicates that pursuant to the plea agreement, the State simply agreed to make no specific sentencing recommendation for Shaheem.

¶38    Based on this record, the postconviction court found that the State had made no promise that Smith would be transferred to federal prison, nor had it promised that Shaheem would not be incarcerated. As these findings are supported by the record, they are not clearly erroneous. *See **Jenkins***, 303 Wis. 2d 157, ¶33. Therefore, there was no breach of the plea agreement, and Smith's claim fails.

*Prosecutorial Misconduct*

---

[7] Electronic docket entries indicate that Shaheem was sentenced to ten years of initial confinement to be followed by five years of extended supervision for his conviction for conspiracy to commit first-degree intentional homicide.

13

¶39     Finally, we address Smith's claims of prosecutorial misconduct. These claims include the prosecutor's alleged untimeliness in disclosing the inculpatory cell phone mapping evidence, and the prosecutor's alleged use of information in the letter from Smith to his trial counsel which was erroneously sent to the prosecutor by the institution where Smith was incarcerated. This court reviews allegations of prosecutorial misconduct "in light of the entire record of the case." *State v. Lettice*, 205 Wis. 2d 347, 353, 556 N.W.2d 376 (Ct. App. 1996).

¶40     As previously discussed, the inculpatory cell phone mapping evidence was discovered during the second week of trial, showing that his cell phone was in the vicinity of where Powe was shot. At that time, the State represented that neither the prosecutor nor the police detectives involved in the case was aware of the inculpatory information prior to the second week of the trial, and the State immediately disclosed it to Smith when it was discovered.

¶41     In fact, at the postconviction hearing, the prosecutor testified that he had previously been informed that the cell phone data indicated that Smith's phone was no where near the vicinity of Powe's shooting. Furthermore, one of the investigators who prepared the maps testified about learning of the inculpatory nature of the mapping evidence during the trial.

¶42     The prosecutor also testified at the postconviction hearing that he did not read the letter from Smith to his trial counsel when it was erroneously forwarded to him. Smith, on the other hand, contended in his supplemental postconviction motion that because the letter discussed the cell phone mapping evidence, the prosecutor must have read it and subsequently "sandbagged" the defense by allowing Smith to stipulate to the admission of the cell phone evidence, based on Smith's belief that it was exculpatory.

¶43     The postconviction court found the prosecutor's testimony credible. It therefore concluded that Smith's misconduct allegations "rest on inferences born out of speculation."

¶44     On appeal, the State argues that the guilty plea waiver rule applies to preclude this claim.  *See State v. Kelty*, 2006 WI 101, ¶18, 294 Wis. 2d 62, 716 N.W.2d 886.  In contrast, Smith asserts that his trial counsel was ineffective for failing to argue prosecutorial misconduct when the disclosure of the cell phone mapping evidence was made during the trial.  Ineffective assistance of counsel is generally viewed as an exception to the guilty plea waiver rule.  *State v. Milanes*, 2006 WI App 259, ¶13, 297 Wis. 2d 684, 727 N.W.2d 94; *State v. Villegas*, 2018 WI App 9, ¶47, 380 Wis. 2d 246, 908 N.W.2d 198 (discussing that the ineffective assistance of counsel exception to the guilty plea waiver rule is applied "when the alleged ineffectiveness is put forward as grounds for plea withdrawal").

¶45     However, Smith's ineffective assistance argument consists of only a conclusory statement that his trial counsel was "prejudicially ineffective" for failing to argue prosecutorial misconduct.  He does not establish either prong of the *Strickland* test.  *See id.*, 466 U.S. at 687.  In other words, even if we were to presume that Smith's prosecutorial misconduct claim is not waived and could be reviewed under the ineffective assistance of counsel rubric, it would nevertheless fail because it is insufficiently pled.  *See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433 (stating it is a question of law whether a defendant, in a postconviction motion, has alleged "sufficient material facts that, if true, would entitle the defendant to relief").

¶46     Furthermore, Smith does not address the prosecutor's representation, when this issue arose at trial, that he was not aware of the inculpatory information

15

in the maps prior to turning them over to Smith. Nor does Smith address the prosecutor's testimony at the postconviction hearing that he did not read the letter and immediately reported the incident to Smith's trial counsel and the trial court. In short, the record does not support Smith's claim of prosecutorial misconduct. *See **Lettice***, 205 Wis. 2d at 353. The claim therefore fails.

## CONCLUSION

¶47 Based on the foregoing, all of the claims raised by Smith on appeal fail. Accordingly, we affirm his judgments of conviction and the order denying his postconviction motions.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.